Mark D. ARCHER, Petitioner–Appellant,

v.

STATE of Tennessee, Respondent–Appellee.

Supreme Court of Tennessee, at Knoxville.

March 22, 1993.

A. Christian Lanier, III, Chattanooga, for petitioner-appellant.

Charles W. Burson, Atty. Gen. & Reporter, Jeannie Kaess, Asst. Atty. Gen., Nashville, David W. Denny, Thomas J. Evans, Asst. Dist. Attys. Gen., Chattanooga, for respondent-appellee.

## OPINION

DAUGHTREY, Justice.

We granted permission to appeal in this case to determine whether challenges to the voluntariness of guilty pleas may prop-erly be advanced in state habeas corpus proceedings. Our examination of the history of the writ of habeas corpus in Tennessee leads us to the conclusion that the reach of the Great Writ is severely restricted in this state and would, in almost all instances, preclude consideration of challenges to the voluntariness of guilty pleas in such proceedings. We thus affirm the judgment of the Court of Criminal Appeals.

The appellant, Mark D. Archer, is presently incarcerated in Alabama after being convicted in that state for the crime of robbery. Archer's prison sentence was enhanced to life imprisonment without the possibility of parole, based upon his previous criminal record that included convictions resulting from five guilty pleas entered in Hamilton County, Tennessee, in 1981.

On November 7, 1990, Archer filed with the Hamilton County Criminal Court a "Petition For Writ Of Habeas Corpus," alleging that the five 1981 guilty pleas entered by him were not knowingly and voluntarily entered. Archer insists that neither his lawyer nor the trial judge explained to him prior to entry of his pleas "his right not to be compelled to incriminate himself and that the convictions could be used at some future time for enhancement of punishment purposes."

The trial court converted the petition for a writ of habeas corpus into a petition for post-conviction relief. Because Archer did not file that petition within the three-year period provided by T.C.A. § 40–30–102 for filing such claims, the trial court also ruled that consideration of the appellant's petition was time-barred.

On appeal, the majority of the Court of Criminal Appeals panel held that any error in the acceptance of Archer's 1981 guilty pleas rendered the judgment entered upon those pleas voidable only, and not void. Consequently, the intermediate court concluded that the validity of the guilty pleas could not be challenged in a habeas corpus proceeding and that the trial court properly converted the petition into one for post-conviction relief and dismissed it as untimely. The court also concluded that even if

Archer's petition were treated as a petition for a writ of habeas corpus, the petition would have to be dismissed because of Archer's failure to comply with various statutory requirements regarding the filing of the petition for the writ.

In a separate concurring opinion, Judge Tipton argued that relevant Tennessee case law holds that the voluntariness of guilty pleas can be challenged in habeas corpus proceedings, citing *State ex rel. Anglin v. Mitchell,* 575 S.W.2d 284 (Tenn.1979). Archer's failure to comply with statutory prerequisites nevertheless doomed the petitioner's prospects for success on the merits of his petition, in Judge Tipton's opinion.

Before this Court, Archer contends that challenges to the voluntariness of guilty pleas may be raised in petitions for writs of habeas corpus. He thus insists that conversion of his petition for a writ of habeas corpus into a petition for post-conviction relief was improper. Archer also argues that if his petition could properly be viewed as a petition for a writ of habeas corpus, application of the three-year *post-conviction* statute of limitations found in T.C.A. § 40–30–102 to that petition would operate to suspend the right to the writ of habeas corpus in contravention of the provisions of Article I, Section 15 of the Tennessee Constitution.

In order to determine whether the trial court erred in treating Archer's habeas corpus petition as a post-conviction petition, we must decide whether challenges to the voluntariness of guilty pleas can be maintained in collateral, habeas corpus proceedings. The answer to that question requires, in turn, an examination of the history and the nature of the writ of habeas corpus itself.

Among the first tribunals to use the writ of habeas corpus were the common law courts of medieval England that issued the writ to release individuals incarcerated by rival courts created by independent towns and feudal lords. As the centuries passed and the common law courts became more entrenched in English law, those common law courts used the Great Writ to challenge even the jurisdiction of tribunals associated with the power of the crown. In fact, during the fifteenth through the seventeenth centuries, the writ issued to effect the release of persons imprisoned by England's Chancery Courts, Admiralty Courts, and the infamous, inquisitorial Star Chamber. Gerstein, "Habeas Corpus," *The Guide to American Law,* Vol. 5, p. 416 (1984). By the nineteenth century, the writ was so revered in Great Britain that Thomas Babington Macaulay, the noted British historian and essayist, could refer to England's Habeas Corpus Act of 1679 as "the most stringent curb that ever legislation imposed on tyranny."

Accustomed to the protections afforded by the writ of habeas corpus, the English colonists journeying to the New World brought with them that same respect for the writ. Upon formation of the United States of America, the founders of the nation included in the constitution the mandate that "[t]he privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it." Constitution of the United States, Article I, Section 9, clause 2. Additionally, the Judiciary Act of 1789 included within it provisions allowing for the issuance of the writ in cases in which actions of the federal government[1] resulted in any violation of the Constitution of the United States, federal statutes, or treaties of the United States. (The habeas corpus provisions of federal law are now codified at 28 U.S.C. § 2241.)

The earliest Supreme Court decisions construing applications of the writ were, however, restrictive in their interpretations of the protections offered by the writ. In *Ex parte Watkins,* 28 U.S. (3 Pet.) 193, 202–03, 7 L.Ed. 650, 653 (1830), for example, the Court observed:

> The court can undoubtedly inquire into the sufficiency of [the cause of a petition-

---

1. The protections of the federal writ of habeas corpus were not extended to prisoners in *state* custody until 1867. Even that late-granted jurisdiction over such claims was withdrawn from the United States Supreme Court the following year, however, and was not restored until 1885. *Fay v. Noia,* 372 U.S. 391, 409–10, 83 S.Ct. 822, 833, 9 L.Ed.2d 837 (1963).

er's confinement]; but if it be the judgment of a court of competent jurisdiction, especially a judgment withdrawn by law from the revision of this court, is not that judgment in itself sufficient cause? Can the court, upon this writ, look beyond the judgment, and re-examine the charges on which it was rendered? A judgment, in its nature, concludes the subject on which it is rendered, and pronounces the law of the case. The judgment of a court of record whose jurisdiction is final, is as conclusive on all the world as the judgment of this court would be. It is as conclusive on this court as it is on other courts. In puts an end to inquiry concerning the fact by deciding it.

. . . .

An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity; and it is not a nullity if the court has general jurisdiction of the subject, although it should be erroneous.

■ Throughout the ensuing years, federal courts began to interpret the reach of the Great Writ more broadly. First, in *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 176–77, 21 L.Ed. 872, 879 (1874), the Supreme Court determined that while a trial court may have general criminal jurisdiction, such a court has no jurisdiction to impose a punishment beyond that authorized for a particular crime. Thus, such an unauthorized punishment may be challenged by a petition for a writ of habeas corpus.

■ Similarly, the writ is available to contest convictions imposed under unconstitutional statutes, because an unconstitutional law is void and can, therefore, create no offense. *Ex parte Siebold*, 100 U.S. 371, 376–77, 25 L.Ed. 717, 719 (1880). Convictions imposed in trials so infected by

violence and mob mentality "that there is an actual interference with the course of justice" may also justify issuance of the writ to cure "a departure from due process of law." *Moore v. Dempsey*, 261 U.S. 86, 91, 43 S.Ct. 265, 266, 67 L.Ed. 543 (1923), *citing Frank v. Mangum*, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915).

Finally, in *Fay v. Noia*, 372 U.S. 391, 409, 83 S.Ct. 822, 832, 9 L.Ed.2d 837 (1963), the United States Supreme Court broadened the concept of habeas corpus relief and suggested that any "restraints contrary to our fundamental law, the Constitution, may be challenged on federal habeas corpus even though imposed pursuant to the conviction of a federal court of competent jurisdiction." Although that expansive interpretation given the writ in *Fay v. Noia* has been restricted somewhat in subsequent decisions[2] of the Supreme Court, *federal* habeas corpus relief remains available "to remedy [almost] any kind of governmental restraint contrary to fundamental law." *Fay v. Noia*, 372 U.S. at 405, 83 S.Ct. at 831.

The development of habeas corpus law in Tennessee parallels, in many ways, the development of early federal law concerning the Great Writ. First, the Tennessee Constitution, like the Constitution of the United States, contains a specific provision prohibiting suspension of the writ. Pursuant to Article I, Section 15 of the Tennessee Constitution, "the privilege of the writ of Habeas Corpus shall not be suspended, unless when in case of rebellion or invasion, the General Assembly shall declare the public safety requires it."

Furthermore, like the language of 28 U.S.C. §§ 2241, *et seq.*, the wording of Tennessee's habeas corpus statute initially appears to offer wide-ranging relief to impris-

---

**2.** *See, e.g., Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (where state provides for full and fair litigation of a Fourth Amendment claim, a petitioner may not challenge an unreasonable search and seizure in a habeas corpus proceeding because there is no personal right to exclude illegally obtained evidence, only a policy to discourage police from future violations); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)

(federal habeas corpus review is barred by waiver of objection at trial absent a showing of "cause" and "prejudice"); *Keeney v. Tamayo-Reyes,* 504 U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (overruling that portion of *Fay v. Noia* that intimated that the proper standard of procedural default in habeas corpus cases is the "deliberate bypass" standard, rather than the "cause and prejudice" standard).

oned individuals. According to the provisions of T.C.A. § 29–21–101, "[a]ny person imprisoned or restrained of his liberty, under any pretense whatsoever, except in cases [in which federal courts have exclusive jurisdiction], may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment and restraint."

Early Tennessee Supreme Court opinions construing state habeas corpus law, again like early United States Supreme Court opinions construing the federal counterpart, nevertheless offered a strict interpretation of the applicability of the writ. In *State v. Galloway*, 45 Tenn. (5 Cold.) 326 (1868), the Court was asked to issue a writ of habeas corpus to effect the release of the editors of a Memphis newspaper who were jailed for contempt of court. In discussing the merits of the editors' argument, the Court emphatically stated:

Under and by virtue of this writ, the party imprisoned, may, and ought to be, discharged and released, if the imprisonment be illegal. If the judgment for the contempt be for cause for which the Court has not jurisdiction *and it so appears upon the record,* the judgment is void, and is no justification for the imprisonment. It stands on the law of universal application to the judgment of Courts that if the Court has no jurisdiction the judgment is void. If, therefore, *it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered,* that the judgment is upon a cause of contempt, for which the Court has no statutory power to punish, or if it so appears that the punishment inflicted is not within the power prescribed by statute for such cause, the judgment will be void for want of jurisdiction of the Court, and will be no justification for the imprisonment or sentence, and no sufficient answer to the writ of *habeas corpus.*

*Id.* at 336–37 (emphasis added).

Similarly, in *State ex rel. Karr v. Taxing District of Shelby County,* 84 Tenn. (16 Lea) 240 (1886), the Court recognized the limited nature of the relief available pursuant to the writ of habeas corpus. The Court emphasized:

When the restraint, from which relief is sought by a writ of *habeas corpus,* proceeds from a judgment erroneous but not void, the writ will not lie. Nor, under it, can the party impeach a judgment as contrary to the facts. And, in general, this is not the remedy where the imprisonment is on judicial process. But where the sentence is void, not merely voidable, or the term of imprisonment under it has expired, relief may be had by the writ. Inferior judicial officers ... sometimes use the writ as if it were a writ of error, under which they might correct the errors and irregularities of other tribunals. "Any such employment of the writ is an abuse."

*Id.* at 249–50 (citations omitted).

The principles espoused in *Karr* were echoed a quarter of a century later in *State ex rel. Conner v. Hebert,* 127 Tenn. 220, 154 S.W. 957 (1913). Citing relevant portions of the *Karr* opinion quoted above, the Court in *Conner* stated, "We know of no case in this state which justifies under any other circumstances the suing out a habeas corpus after final judgment and commitment thereunder, nor any principle justifying such a course, save as below indicated." *Id.* at 243, 154 S.W. at 963–64. The Court then noted that issuance of the Great Writ would also be proper in a situation in which newly discovered evidence established that the prerequisites for taking an individual into custody for extradition to another state had not been met. In such a situation, although no court judgment would yet have been rendered and although no term of imprisonment would have yet expired, the detention of the individual would be beyond the power of the state and should properly be subject to habeas corpus relief as an act of incarceration void *ab initio.*

Through the early 1960's, this Court consistently abided by its earlier decisions limiting the scope of the writ of habeas corpus in Tennessee. As late as 1963, we recognized that habeas corpus proceedings were collateral attacks upon a court's judgment

and that such challenges "cannot prevail unless such judgment is void." *State ex rel. Holbrook v. Bomar, 211 Tenn. 243, 246, 364 S.W.2d 887, 888 (1963) (emphasis added). Furthermore, in* Holbrook *we noted:*

> Upon a collateral attack on a judgment of a court of general jurisdiction made by the parties or their privies, such judgment is presumed to be in all respects regular and valid, unless the record affirmatively shows that the court rendering the judgment lacked jurisdiction of the subject matter or of the person; such presumption is conclusive "unless it is impeached by the record itself."

*Id.* at 247, 364 S.W.2d at 889 (citations omitted).

Against this historical backdrop, the relator in *State ex rel. Wood v. Johnson,* 216 Tenn. 531, 393 S.W.2d 135 (1965), attempted to challenge the voluntariness of his guilty plea pursuant to a petition for writ of habeas corpus. In affirming the trial court's refusal to issue such a writ, this Court relied upon the principles espoused in *Holbrook* and noted that Wood's "present averment that he was coerced into pleading guilty constitutes a collateral attack upon a valid judgment of a court of general jurisdiction, *which may not be done by petition for writ of habeas corpus." State ex rel. Wood v. Johnson,* 216 Tenn. at 534, 393 S.W.2d at 136 (emphasis added).

■ While consistent with traditional habeas corpus jurisprudence, state court decisions, both in Tennessee and elsewhere, similar to that in *Wood* necessarily left state court defendants without redress for alleged constitutional errors in many cases. In *Case v. Nebraska,* 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965), even the United States Supreme Court recognized that state habeas corpus statutes were restricted in their scope and that many challenges allowed under federal habeas corpus statutes could not be made collaterally by state prisoners alleging violations of state constitutional rights. Consequently, in his concurring opinion in *Case,* Justice Clark exhorted the states to enact procedures allowing such collateral attacks of facially valid judgments. *Id.* at 340, 85 S.Ct. at 1489.

The Tennessee General Assembly responded to that invitation and enacted the Tennessee Post–Conviction Procedure Act (now codified at T.C.A. §§ 40–30–101 *et seq.*) in 1967. *Luttrell v. State,* 644 S.W.2d 408, 409 (Tenn.Crim.App.1982). Pursuant to that act, post-conviction petitioners, unlike habeas corpus petitioners, may challenge convictions or sentences that are either void *or* voidable because of constitutional deprivations. T.C.A. § 40–30–105.

Despite recognition by the state judiciary that "[h]abeas corpus under Tennessee law has always been, and remains, a very narrow procedure," *Luttrell v. State,* 644 S.W.2d at 409, judicial decisions rendered after the passage of the Post–Conviction Procedure Act began to blur the distinctions between the two types of collateral challenges to final judgments. In fact, in 1971, the Sixth Circuit Court of Appeals suggested that "[f]or all practical purposes the Post–Conviction Procedure Act of 1967 appears to have superseded the earlier State habeas corpus statute." *Rutter v. Wright,* 439 F.2d 1002, 1003 (6th Cir.1971).

Not surprisingly, therefore, dicta in the 1979 case of *State ex rel. Anglin v. Mitchell,* 575 S.W.2d 284 (Tenn.1979), appeared to expand the scope of habeas corpus relief significantly and provided support for the contentions now made in the present case by Archer. In *Anglin,* the Court observed that

> ... the denial of [the right to counsel] operates to render a judgment against a defendant absolutely void and he may, if imprisoned under such a judgment, obtain his release by habeas corpus.
>
> The same is true of a plea of guilty which is not voluntarily and knowingly entered.... A judgment based upon a plea of guilty which was not voluntarily and knowingly entered is void and may be attacked by the remedy of habeas corpus.

*Id.* at 288 (citations omitted).

In concluding that involuntary guilty pleas are subject to attack by petitions for issuance of the writ of habeas corpus, the Court relied only upon two federal court cases discussing the broader availability of

*federal* habeas corpus relief and upon the Tennessee cases of *Henderson v. State ex rel. Lance,* 220 Tenn. 520, 419 S.W.2d 176 (1967), and *State ex rel. Barnes v. Henderson,* 220 Tenn. 719, 423 S.W.2d 497 (1968). We do not believe, however, that either *Lance* or *Barnes* can be read to stand for the broad proposition for which they are cited in *Anglin.*

In *Lance,* the Court did affirm the granting of a petition for writ of habeas corpus challenging the validity of a guilty plea. The challenge in that case, however, differed fundamentally from the error alleged in the present proceeding by Archer. Lance had agreed to plead guilty to the charge of armed robbery committed while he was on parole from a prior conviction. As part of the plea bargain, he accepted a concurrent sentence for the minimum period of incarceration allowed by statute. At that time, however, T.C.A. § 40–3620 *required* the trial court to impose consecutive sentencing on any defendant convicted of a crime committed while on parole. The court was, therefore, without jurisdiction or authority to enter judgment against Lance with a provision for concurrent sentencing. Because the judgment was thus facially void, the trial court and Supreme Court correctly determined that a writ of habeas corpus could issue to release Lance from his guilty plea.

In *Barnes,* this Court did examine the voluntariness of the relator's guilty plea pursuant to his request for issuance of a writ of habeas corpus. The only citations to authority allowing such collateral review, however, were to federal habeas corpus cases. The Court included no discussion of prior Tennessee precedent forbidding such collateral attack under the state's limited habeas corpus review. As a result, *Barnes* cannot be considered sufficient authority to support the broad dicta in *Anglin.*

Moreover, this Court has not chosen to follow the unsupported dicta in *Anglin* in the years since the release of that opinion. Rather, recent decisions of this Court have recognized the legal and historical distinction between habeas corpus relief and post-conviction relief and between void judgments and judgments that are voidable only. For example, in *State v. Neal,* 810 S.W.2d 131, 134 (Tenn.1991), we noted that failure to advise a defendant fully of rights waived by entry of a guilty plea "merely renders the related judgment voidable rather than void."

We have also reaffirmed that "[t]he Post–Conviction Procedure Act, T.C.A. §§ 40–30–101 to –124, provides the procedure for attacking a constitutionally defective conviction based on a guilty plea that was not knowingly and voluntarily entered, as required by *Boykin*." *Johnson v. State,* 834 S.W.2d 922, 925 (Tenn.1992). In *Johnson,* we elaborated upon the reason for requiring collateral challenges to guilty pleas to be, in almost all circumstances, brought pursuant to the requirements of the Post–Conviction Procedure Act. Unlike assertions indicating that the convicting court was without jurisdiction to enter a judgment or a claim that a sentence of imprisonment has expired,

> ... mere proof that a trial court failed to give the accused the advice mandated does not establish that the plea was unknowing or involuntary, but, nothing else appearing, it does shift the burden of proof to the State. The State may then, by clear and convincing proof, establish that the plea was knowing and voluntary, in which event the plea will not be disturbed.

*Id.* at 926. Consequently, such a claim by a petitioner does not indicate that a prior conviction is void but, rather, only voidable upon satisfaction of an evidentiary burden.

Likewise, in *Potts v. State,* 833 S.W.2d 60, 62 (Tenn.1992), we reaffirmed the longstanding interpretation of the habeas corpus provisions of Tennessee law. In rejecting a petitioner's claim in *Potts* that T.C.A. § 40–30–102's three-year statute of limitations on post-conviction petitions violates the constitutional ban on suspension of the writ of habeas corpus, we held:

> Unlike the post-conviction petition, the purpose of a habeas corpus petition is to contest void and not merely voidable judgments. *See State ex rel. Newsom v.*

*Henderson,* 221 Tenn. 24, 424 S.W.2d 186, 189 (1968). A petitioner cannot collaterally attack a facially valid conviction in a habeas corpus proceeding. *State ex rel. Holbrook v. Bomar,* 211 Tenn. 243, 364 S.W.2d 887, 888 (1963).

Application of these established standards to the facts of Archer's case leads us to the conclusion that the trial court correctly dismissed the appellant's petition for writ of habeas corpus without a hearing. The allegations in the petition, amended with the assistance of counsel, in no way suggest that the challenged convictions are void due to the trial court's lack of jurisdiction over either the subject matter of the proceeding or over the person of the appellant. Furthermore, the petition does not indicate that the record of the proceedings would show that the trial court's actions were unauthorized or that Archer's sentence has expired and that the appellant is thus being restrained illegally.

Habeas corpus relief is available in Tennessee only when "it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered" that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired. The petition in this case, however, like most *post-conviction* challenges to the voluntariness of guilty pleas, alleges only that, upon introduction of further proof and after appropriate findings of fact by the trial judge, the facially valid judgments *may* be voided. The appellant's convictions based upon his 1981 guilty pleas are, therefore, not void, but merely voidable. Consequently, such allegedly improper pleas should have been challenged through a post-conviction relief petition.

In accordance with the constitutional mandate of Article I, Section 15 of the Tennessee Constitution, a proper petition for issuance of a writ of habeas corpus may be brought at any time while the petitioner is incarcerated, to contest a void judgment or an illegal confinement. Because, however, Archer's petition in this case does not properly allege grounds on which habeas corpus relief can be granted, the appellant is not entitled to challenge the validity of his guilty pleas at any time during which he is incarcerated pursuant to those pleas. Rather, because this petition seeks only to void a judgment valid on its face and valid on the record of the proceedings held to render that judgment, the claim must be brought within the time period allowed by T.C.A. § 40–30–102 or be barred.[3]

As we previously noted in *Potts,* the post-conviction statute of limitations applies only to petitions for post-conviction relief. The statute does not in any way affect legitimate petitions for writs of habeas corpus and does not, therefore, contravene the provisions of Article I, Section 15 of the Tennessee Constitution. *Potts v. State,* 833 S.W.2d at 62. The mere fact that an appellant designates a pleading as a petition for habeas corpus relief does not, however, mean that the jurisdiction of the habeas corpus statutes has been properly invoked. If the petition is, in fact, a request for relief that may be granted only pursuant to the post-conviction statutes, a court may properly treat that petition as a petition for post-conviction relief and apply the appropriate three-year statute of limitations to its filing. T.C.A. § 40–30–108.

Finally, we take this opportunity to note that in affirming the trial court's dismissal of Archer's petition for a writ of habeas corpus, the Court of Criminal Appeals held that the appellant's petition was also subject to dismissal for failure to comply with the procedural requirements of the habeas corpus statutes. Specifically, the intermediate court noted that Archer had not filed his petition for a writ of habeas corpus in the court "most convenient in point of distance to the applicant," or offered a suffi-

---

**3.** To satisfy principles of due process, this Court has recognized that T.C.A. § 40–30–102's three-year statute of limitations must be extended to afford petitioners an opportunity to raise claims at a meaningful time and in a meaningful manner after such claims first arise. *Burford v. State,* 845 S.W.2d 204 (Tenn.1992).

cient reason "for not applying to such court or judge." T.C.A. § 29–21–105.

Without question, the procedural provisions of the habeas corpus statutes are mandatory and must be followed scrupulously. *Bateman v. Smith*, 183 Tenn. 541, 543, 194 S.W.2d 336, 337 (1946). In this case, however, compliance with the "most convenient court" rule is impossible because the appellant is presently incarcerated in Alabama, not in a facility under the jurisdiction of the Tennessee courts and subject to Tennessee habeas corpus statutes. This situation raises a much more difficult question not addressed by the parties, *i.e.*, whether a petitioner being held out of state has standing to file for a writ of habeas corpus in this state, since the writ, if issued, could not be directed to a Tennessee official. Because we have decided the case on a different basis, and because this question has not been raised or addressed by the parties, we decline to decide it *sua sponte.*

Archer has alleged in this case that his 1981 guilty pleas were involuntary because the trial court failed to advise him of certain consequences that attached to entry of those pleas. Despite the appellant's allegations to the contrary, this challenge to the voluntariness of the pleas does not establish that the convictions based upon those pleas are void, rather than voidable. Consequently, the petition does not allege proper grounds for habeas corpus relief in Tennessee. We thus affirm the trial court's dismissal of the petition. Costs of this action are assessed against the appellant, Mark D. Archer.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.