# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 2, 2004

## JERRY D. CARNEY v. DAVID MILLS, WARDEN

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 5864   Joseph H. Walker, III, Judge**

---

**No. W2004-01563-CCA-R3-HC  - Filed December 2, 2004**

---

The Petitioner, Jerry D. Carney, was convicted in 1998 of first degree murder, and the trial court sentenced him to life with the possibility of parole.  In 2004, the Petitioner filed a pro se petition for of habeas corpus, which the trial court summarily dismissed.  On appeal, the Petitioner contends that the trial court erred in dismissing his petition because the indictment charging him with first degree murder was defective and because the trial court improperly instructed the jury at his trial.  Finding no reversible error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Jerry D. Carney, Pro se.

Paul G. Summers, Attorney General and Reporter; and Rachel E. Willis, Assistant Attorney General; for the appellee, State of Tennessee.

## OPINION
### I. Facts

The Petitioner was convicted of first degree murder by a Davidson County Jury, and the trial court sentenced him to life in prison with the possibility of parole.  On direct appeal, this Court affirmed the Peititoner's conviction.  State v. Jerry D. Carney, No. M1999-01139-CCA-R3-CD, 2000 WL 1335770 (Tenn. Crim. App., at Nashville, Sept. 25, 2000), *perm. app. denied* (Tenn. Apr. 24, 2001).  The following facts were set forth in our opinion on the Petitioner's direct appeal:

> On the night of August 13, 1997, the appellant, Jerry Carney, was "riding around" Nashville and drinking beer with his friends Eric Bradshaw, Mike Shane, Jimmy Womack, and Melia Gribble. Erin Harris, another friend, paged the appellant and requested that he pick her up at 716 Virginia Avenue. On the way to Virginia

Avenue, Bradshaw remarked that he believed that someone who had a problem with his brother, someone named "Shane" or "Shawn," lived at that address.

Upon arriving at the residence, the four males exited the car and began urinating in the front yard. Bill Massey and Craig Cartwright walked out of the residence to investigate. The appellant began asking several people, "Who is Shane?" Cartwright responded that he was Shane. Upon hearing Cartwright identify himself as Shane, the appellant quickly walked back to the vehicle and sat in the back seat behind the driver.

Massey approached the car on the driver's side and noticed a gun on the seat near the appellant. Massey asked if the appellant had a problem. The appellant replied that there was no problem. Massey then requested one of the beers that was located in the back seat. The appellant handed Massey a beer. As soon as Massey touched the beer, the appellant grasped the gun with both hands. Massey threw down the beer and grabbed the appellant, hoping to disarm him. Cartwright had moved to the passenger side of the car. Although Massey was in direct contact with the appellant, the appellant never looked at Massey. Instead, the appellant pulled the slide of the gun back twice and fired six shots into Cartwright who was standing near the open passenger door.

The appellant, Bradshaw, Shane, Womack, Gribble, and Harris sped away in the car to Bradshaw's house. The appellant took a shirt and wiped the car, inside and out, in order to destroy evidence. He also removed a decal from the back glass of the car and tried to remove all of the spent shell casings from the car. The appellant entered Bradshaw's house, removed his bloody clothes, and soaked them in water in the bathtub. He then went to sleep and slept until the next day when he was picked up by the police for questioning.

The appellant testified that he shot Cartwright in self-defense. The appellant stated that he was afraid of Massey and Cartwright because they were much larger than he. The appellant claimed that Massey had grabbed the appellant by the shirt collar prior to the appellant's retreat to the car. The appellant alleged that he feared Massey or Cartwright would hurt him or try to take his gun and use it against him.

In 2004, the Petitioner filed a petition for habeas corpus relief alleging that his indictment was defective and that the jury was improperly instructed. The trial court summarily dismissed the Petitioner's petition, and he appeals that judgment of the trial court.

## II. Analysis

On appeal, the Petitioner contends that the trial court erred by dismissing his petition for

habeas corpus relief because the indictment charging him with first degree murder was defective and because the jury was improperly instructed at his trial.

Article I, section 15 of the Tennessee Constitution guarantees its citizens the right to seek habeas corpus relief. In Tennessee, a "person imprisoned or restrained of [his or her] liberty, under any pretense whatsoever . . . may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment . . . ." Tenn. Code Ann. § 29-21-101 (2000). The grounds upon which habeas corpus relief will be granted are very narrow. See State v. Ritchie, 20 S.W.3d 624, 630 (Tenn. 2000). "Unlike the post-conviction petition, the purpose of a habeas corpus petition is to contest void and not merely voidable judgments." Potts v. State, 833 S.W.2d 60, 62 (Tenn. 1992). Therefore, in order to state a cognizable claim for habeas corpus relief, the petition must contest a void judgment. Id. "A void judgment is one in which the judgment is facially invalid because the court did not have the statutory authority to render such judgment . . . . A voidable judgment is one which is facially valid and requires proof beyond the face of the record or judgment to demonstrate its voidableness." Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998) (citing Archer v. State, 851 S.W.2d 157, 161 (Tenn. 1993)). Thus, a writ of habeas corpus is available only when it appears on the face of the judgment or the record that the convicting court was without jurisdiction to convict or sentence a defendant, or that the sentence of imprisonment or other restraint has expired. Archer, 851 S.W.2d at 164; Potts, 833 S.W.2d at 62.

The petitioner bears the burden of showing, by a preponderance of the evidence, that the conviction is void or that the prison term has expired. Passarella v. State, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994), *superceded by statute as stated in* (State v. Steven S. Newman, No. 02C01-9707-CC-00266, 1998 WL 104492, at *1 n.2 (Tenn. Crim. App., at Jackson, Mar. 11, 1998), *no perm. app. filed.* Furthermore, the procedural requirements for habeas corpus relief are mandatory and must be scrupulously followed. Archer, 851 S.W.2d at 165. It is permissible for a trial court to summarily dismiss a petition of habeas corpus without the appointment of a lawyer and without an evidentiary hearing if there is nothing on the face of the judgment to indicate that the convictions addressed therein are void. See Passarella, 891 S.W.2d at 627; Rodney Buford v. State, No. M1999-00487-CCA-R3-PC, 2000 WL 1131867, at *2 (Tenn. Crim. App., at Nashville, July 28, 2000), *perm. app. denied* (Tenn. Jan. 16, 2001). Because the determination of whether habeas corpus relief should be granted is a question of law, our review is de novo with no presumption of correctness. Hart v. State, 21 S.W.3d 901, 903 (Tenn. 2000).

## A.  Indictment

The Petitioner alleges that his indictment was defective because it failed to allege that the killing was a "homicide," which the Petitioner says is the "overall overt act," and because the indictment failed to state that the killing was committed "unlawfully." As a result, the Petitioner contends, he was not on notice that he would have to defend against an "unlawful" killing, and he only presented the defenses of self-defense and intoxication. Further, he asserts, the trial court was not on notice that a judgment and sentence for first degree murder was proper upon conviction.

The Petitioner's indictment reads:

THE GRAND JURORS of Davidson County, Tennessee, duly impaneled and sworn, upon their oath, present that:

**JERRY D. CARNEY**

on the **13th** day of **August, 1997,** in Davidson County, Tennessee and before the finding of this indictment intentionally, and with premeditation did kill **Craig Cartwright**, in violation of Tennessee Code Annotated § 39-13-202, and against the peace and dignity of the State of Tennessee.

First degree murder, as defined by Tennessee Code Annotated section 39-13-202 (2003) is, in pertinent part, "A premeditated and intentional killing of another . . . ." Criminal homicide, as defined by Tennessee Code Annotated section 39-13-201 (2003), is "the unlawful killing of another person which may be first degree murder, second degree murder, voluntary manslaughter, criminally negligent homicide or vehicular homicide."

Based on this information, the Petitioner in the case under submission has two complaints based on the indictment. First, he contends that this indictment was fatally defective because it did not include the word "unlawful," a word the Petitioner says is an essential element. Second, he asserts that, because the indictment failed to charge that the killing was "unlawful," it was insufficient to place the trial court on notice that a judgment and sentence for first degree murder was proper upon conviction. If the Petitioner is correct and his indictment is defective, a defective indictment is an appropriate issue to be brought in a habeas corpus petition. See Wyatt v. State, 24 S.W.3d 319 (Tenn. 2000).

The Tennessee Supreme Court has held that, for constitutional purposes, "an indictment is valid if it provides sufficient information: (1) to enable the accused to know the accusation to which answer is required; (2) to furnish the court adequate basis for the entry of a proper judgment; and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). Further, the indictment must meet the statutory requirements of Tennessee Code Annotated section 40-13-102, which provides:

The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty, which will enable the court, on conviction, to pronounce the proper judgment; and in no case are such words as "force and arms" or "contrary to the form of the statute" necessary.

In Hill, our supreme court concluded that, although the scienter requirement was not stated in the indictment, the indictment was valid, based upon it: (1) satisfying the three aforementioned constitutional requirements; (2) complying with the notice requirements of Tennessee Code Annotated section 40-13-202; and (3) providing a basis for logically inferring the mental element

of the crime charged. Id. at 726-27. The Hill court stressed that indictments should be scrutinized from the vantage point of "common sense and right reason rather than from the narrow standpoint of . . . technicality or hair splitting fault finding." Id. at 728 (quoting United States v. Purvis, 580 F.2d 853, 857 (5th Cir.1978)). Since Hill, the Court has often repeated its intention to relax "common law pleading requirements and its reluctance to elevate form over substance when evaluating the sufficiency of indictments." See e.g., State v. Hammonds, 30 S.W.3d 294, 300 (Tenn.2000). In Hammonds, the Court said, "Indeed, Hill and its progeny leave little doubt that indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." Id.; see State v. Sledge, 15 S.W.3d 93, 94 (Tenn.2000); Crittenden v. State, 978 S.W.2d 929, 931 (Tenn.1998); Ruff v. State, 978 S.W.2d 95, 100 (Tenn.1998). The Tennessee Supreme Court has held that an indictment may refer to the statute that defines the offense and that indictment is sufficient and satisfies all constitutional and statutory requirements. See State v. Sledge, 15 S.W.3d 93, 95 (2000); see also Ruff v. State, 978 S.W.2d 95, 100 (Tenn. 1998).

In the case under submission, the indictment about which the Petitioner complains is attached to the appellate record. After a thorough review of the indictment in this case, we find that it meets both the constitutional and statutory requirements. The Petitioner is named as the accused, the date of the offense is give, the actus reus and mens rea of each offense is stated. Further, the indictment afforded the Petitioner clear, understandable notice that he was being charged with a violation of Tennessee Code Annotated 39-13-202, which proscribes first degree murder. The indictment tracks the first degree murder statute and alleges that the Petitioner intentionally, and with premeditation, killed the victim. The indictment's failure to allege that this killing occurred "unlawfully" as defined by the criminal homicide statute does not make it defective. Accordingly, the Petitioner was provided adequate notice of the charges against him and the trial court had an adequate basis for the entry of a proper judgment. Therefore, this issue is without merit.

## B. Jury Instruction

The Petitioner next contends that the trial court erred when it instructed the jury by not providing them Tennessee Pattern Jury Instruction number 43.06. Additionally, he asserts that, when the trial court instructed the jury that to find the Petitioner guilty it must find that the Petitioner committed this killing "unlawfully," the instruction broadened the charged offense thereby constructively amending the indictment. Initially, we note that an allegation of an erroneous jury instruction will not sustain an action for habeas corpus relief because such an allegation would, at most, make the judgment voidable and not void. Therefore, habeas corpus relief is not warranted. See, e.g., Passarella v. State, 891 S.W.2d 619, 626 (Tenn. Crim. App.1994) (remedy of habeas corpus in criminal cases is limited to cases where the judgment is void or the term of imprisonment has expired); see also James Dubose v. State, M2004-01021-CCA-R3-JC, 2004 WL 2346010, at *1 (Tenn. Crim. App., at Nashville, Oct. 15, 2004) *no perm. app. filed* (citing Willie Edward Thornton v. Raney, No. 02C01-9302-CC-00025, 1994 WL 25827at *1-2 (Tenn. Crim. App., at Jackson, Jan. 26, 1994) (holding that erroneous jury instructions meet none of the requirements for habeas corpus relief), *perm. app. denied* (Tenn. May 23, 1994)). We also conclude that the Petitioner's assertions

are without merit.  The trial court properly instructed the jury that, to find the Petitioner guilty, they must find that the Petitioner committed this killing "unlawfully."  Furthermore, Tennessee Pattern Jury Instruction 43.06 must be instructed when a jury is returning an oral verdict.  The record reflects, however, that this jury had a verdict form, making this instruction inapplicable.  This issue is without merit.

### III.  Conclusion

In accordance with the foregoing authorities and reasoning, we AFFIRM the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE