IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 5, 2002

## CHRISTOPHER CURRY v. FRED RANEY, WARDEN

**Direct Appeal from the Circuit Court for Lake County**
**No. 02-CR-8241     R. Lee Moore, Jr., Judge**

**No. W2002-01174-CCA-R3-CO - Filed May 22, 2003**

The petitioner, Christopher Curry, filed in the Lake County Circuit Court a pro se petition for writ of habeas corpus, alleging that his confinement was illegal due to the expiration of his sentence. The habeas corpus court summarily dismissed the petition and the petitioner appealed. Upon review of the record and the parties' briefs, we reverse the dismissal of the petition for habeas corpus relief and remand to the habeas corpus court for the appointment of counsel and an evidentiary hearing to determine whether the petitioner's sentence has expired.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Christopher Curry, Tiptonville, Tennessee, pro se.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Marcia Fogle, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

The following facts were alleged in the petitioner's pro se petition for habeas corpus relief. In March 1992, the petitioner pled guilty in the Madison County Criminal Court to three counts of forgery and was sentenced to an effective sentence of six years community corrections. In July 1993, after meeting "certain conditions," the petitioner was placed on regular probation. The petitioner claimed that while on probation, he had "numerous" probation officers. In April 1997, a probation officer named Judy visited the petitioner at his home at 33 Carver C-2, Jackson, Tennessee. Judy informed the petitioner that she was just "filling in" and that his new probation

officer would contact him. The petitioner provided Judy with a "medical statement that indicated that [the petitioner] would be convalescing at his residence for four (04) months."[1]

The petitioner alleged that, in February 1998, he was served at work with a probation violation arrest warrant for "failure to report[] and absconding." The petitioner retained an attorney, but was released from custody in March 1998 without having attended a revocation hearing.[2] The petitioner claimed that he "never received anything from the court, or his attorney . . . about the disposition of the court's decision." The petitioner was subsequently contacted by Probation Officer Julia Sipes, who advised him that she was not aware of the court's disposition. Nevertheless, Sipes informed the petitioner that his probation would be starting over on March 10, 1998. The petitioner told Sipes that he had not absconded and that he had continuously resided at the same address on Carver throughout his probationary period.

The petitioner claimed that, in July 2000, another probation revocation hearing was held, at which hearing "[c]ounsel for [the petitioner] argued that [the] trial court was without authority to issue warrants and hold probation revocation hearings because the term of sentence had been satisfied prior to [the] petitioner's release." However, the trial court determined that the petitioner had one month remaining on his sentence and reinstated the petitioner's original six year sentence, placing the petitioner back on probation. The petitioner related that "he made his last probation appointment in August."

On May 7, 2001, the trial court held another probation revocation hearing. Probation Officer Sipes allegedly reported that the petitioner had violated his probation by failing to pay fines, absconding, and obtaining a new arrest. The petitioner argued that his sentence had expired. The petitioner also claimed that he continued to reside at the same address, he had maintained continuous employment as a manager in the J.C. Penney's maintenance department, and his arrest involved a traffic violation. According to an order dated May 15, 2001, the trial court revoked the petitioner's probation and ordered the petitioner to serve his sentence as originally imposed.

Based upon the documents contained in the record, this court is able to determine the following. On March 27, 1992, the petitioner pled guilty to three counts of forgery and was sentenced on each count to two years in the Tennessee Department of Correction to be served consecutively, for an effective six year sentence. According to the judgment of conviction, the trial court placed the petitioner in a community corrections program and agreed to allow the petitioner to be transferred to regular probation upon the recommendation of community corrections and upon the satisfaction of certain conditions. On July 28, 1993, the petitioner was placed on regular probation. In an order dated March 16, 1998, the trial court revoked the petitioner's probation and ordered the petitioner "to serve the sentence of 6 years in the [Tennessee Department of

---

[1] The petitioner claimed to suffer from Neurofibromatosis and stated that he "had just undergone an operation by his physician, Dr. Hazelhert, a Neurologist."

[2] The petitioner does not state whether the trial court actually held a revocation hearing.

Correction]." The same order stated that the petitioner was to be placed back on probation. A second order dated March 26, 1998, provided the same disposition. On July 31, 2000, a third order was entered revoking the petitioner's probation and reinstating the original six year sentence. Again, the petitioner was placed on probation "subject to the same terms and limitations previously imposed." Finally, on May 15, 2001, an order was entered revoking the petitioner's probation and ordering the petitioner to serve his sentence as originally imposed, six years in the Tennessee Department of Correction.

On February 6, 2002, the petitioner filed a petition for writ of habeas corpus in the Lake County Circuit Court. The petition alleged that the petitioner "has conclusively served more than six (06) years of probation, and that his present confinement is illegal." The habeas corpus court summarily dismissed the petition, finding that the petitioner's allegations were not the proper subject for habeas corpus proceedings. This appeal followed.

## II. Analysis

When reviewing a petition for habeas corpus relief, the determination of whether relief should be granted is a question of law subject to de novo review with no presumption of correctness. McLaney v. Bell, 59 S.W.3d 90, 92 (Tenn. 2001) (citing Hart v. State, 21 S.W.3d 901, 903 (Tenn. 2000)). The burden is on the petitioner to demonstrate by a preponderance of the evidence that he is entitled to relief. Wyatt v. State, 24 S.W.3d 319, 322 (Tenn. 2000). If the petitioner carries that burden, he is entitled to immediate release. Passarella v. State, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994).

Tennessee law provides narrow grounds upon which habeas corpus relief will be granted. McLaney, 59 S.W.3d at 92. In Tennessee, habeas corpus relief is available

> only when it appears upon the face of the judgment or the record of
> the proceedings upon which the judgment is rendered that a court
> lacked jurisdiction or authority to sentence a defendant or that the
> sentence has expired. A habeas corpus petition may be used to
> challenge judgments that are void and not merely voidable.

Stephenson v. Carlton, 28 S.W.3d 910, 911 (Tenn. 2000); see also Archer v. State, 851 S.W.2d 157, 164 (Tenn. 1993). A void judgment is one that is "facially invalid because the court lacked jurisdiction or authority to render the judgment or because the [petitioner's] sentence has expired." Taylor v. State, 995 S.W.2d 78, 83 (Tenn. 1999) (citing Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998)). In contrast, a voidable conviction "is one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." Id.

"A [habeas corpus] court is not required, as a matter of law, to grant the writ and conduct an inquiry into the allegations contained in the petition." Passarella, 891 S.W.2d at 627 (footnote omitted). In fact, "where the allegations in a petition for writ of habeas corpus do not demonstrate that the judgment is void, a [habeas corpus] court may correctly dismiss the petition without a hearing." McLaney, 59 S.W.3d at 93; see also Tenn. Code Ann. § 29-21-109 (2000). Conversely, if the petition alleges facts that, if true, would entitle the petitioner to habeas corpus

relief, an evidentiary hearing is warranted.  See Russell v. State ex rel. Willis, 437 S.W.2d 529, 531 (Tenn. 1969).

We conclude that, because the facts alleged in the petition, if true, would entitle the petitioner to relief, the habeas corpus court erred in summarily dismissing the petition for writ of habeas corpus without appointing counsel and conducting an evidentiary hearing.  On March 27, 1992, the petitioner was sentenced to three consecutive sentences of two years, to be served in a community corrections program.  On July 28, 1993, the petitioner was transferred to regular probation.  Although we cannot be certain, the documents in the record appear to indicate that at the time of the initial revocation on March 16, 1998, two of the consecutive two year sentences had expired.  If so, the trial court was without authority to revoke the probation for those two sentences.  Instead, the trial court had authority only to revoke the two year probationary sentence for the third count of forgery.  State v. Randall Anthony, No. W2000-02234-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 510, at *10 (Jackson, July 6, 2001).  Accordingly, the trial court could have only reinstated a sentence of two years probation, which sentence would have expired March 16, 2000.  It is possible that the reinstated period of probation would have expired before the issuance of the violation warrant leading to the revocation of probation on July 31, 2000.  However, that warrant was not made a part of the record on appeal.  In any event, the habeas corpus court should have appointed counsel and conducted a hearing to determine whether the petitioner's sentences had indeed expired.  If so, the petitioner is entitled to immediate release from these sentences.

### III.  Conclusion

For the foregoing reasons, we reverse the dismissal of the petition for habeas corpus relief and remand this matter to the habeas corpus court for the appointment of counsel and an evidentiary hearing to determine whether the petitioner's sentence has expired.

_____
NORMA McGEE OGLE, JUDGE

-4-