IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 13, 2004

## DEWAYNE CATHEY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Hardeman County**
**No. 9578     Jon Kerry Blackwood, Judge**

---

**No. W2003-00411-CCA-R3-CO  - Filed July 28, 2004**

---

The petitioner, Dewayne Cathey, petitioned the Hardeman County Circuit Court for a writ of *habeas corpus* to challenge his sentence in his 1993 Shelby County, guilty-pleaded conviction of first-degree murder.  The lower court summarily dismissed the petition, and on appeal, the petitioner claims that the trial court erred in dismissing his petition without a hearing.  Upon our review of the record, we reverse and vacate the trial court's order.  Furthermore, we order the lower court to grant *habeas corpus* relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Reversed and Vacated.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

Dewayne Cathey, Appellant, *Pro Se.*

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Elizabeth T. Rice, District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On appeal, the petitioner posits that his life sentence, designated on his conviction judgment form as a Range I, 30-percent sentence, is void.  He complains that Tennessee law did not authorize at the time of conviction a life sentence to be served at 30 percent.  The state argues that the claim is waived because the record on appeal contains no transcript of the petitioner's guilty plea submission hearing.  Alternatively, the state claims that the trial court, at worst, clerically erred in indicating that the first-degree murder life sentence would be served at 30 percent.

The legal issues raised on denying a *habeas corpus* hearing are questions of law, and our review of questions of law is *de novo*.  *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000) ("[W]hether to grant the petition [for *habeas corpus* relief] is a question of law that we review *de*

*novo."*); *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997) (question of law reviewed on appeal *de novo*).

We begin with a review of *habeas corpus* law as it presently exists in Tennessee. *Habeas corpus* relief is available only when the aggrieved party's conviction is void or the sentence has expired. *See Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993). The petitioner in the present case makes no allegation that his sentence has expired; he only claims that his sentence, and hence his conviction judgment, is void.

A void conviction is one which strikes at the jurisdictional integrity of the trial court. *Id.*; *see State ex rel. Anglin v. Mitchell*, 575 S.W.2d 284, 287 (Tenn. 1979); *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994). Because in this case the trial court apparently had jurisdiction over the *actus reus*, the subject matter, and the person of the petitioner, the petitioner's jurisdictional issue is limited to the claim that the court was without authority to enter the judgment. *See Anglin*, 575 S.W.2d at 287 ("'Jurisdiction' in the sense here used, is not limited to jurisdiction of the person or of the subject matter but also includes lawful authority of the court to render the particular order or judgment whereby the petitioner has been imprisoned."); *see also Archer*, 851 S.W.2d at 164; *Passarella*, 891 S.W.2d at 627.

The invalidity of the sentence itself, as well as the broader invalidity of the conviction, results in a void judgment and is a sufficient basis for *habeas corpus* relief. *See Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000) (a void sentence, as well as a void conviction, may result in a void judgment and be the subject of a *habeas corpus* proceeding). For an illegal sentence claim to support a claim for *habeas corpus* relief, however, the illegality of the sentence must be egregious to the point of voidness. *Cox v. State*, 53 S.W.3d 287, 292 (Tenn. Crim. App. 2001). Thus, mere clerical errors in the terms of a sentence may not give rise to a void judgment. *See, e.g., Ronald W. Rice v. David Mills*, No. E2003-00328-CCA-R3-PC, slip op. at 3-4 (Tenn. Crim. App., Knoxville, Aug. 19, 2003) (trial court erred in designating on the judgment form that the petitioner was sentenced under the 1982 sentencing law, when the 1989 law applied to Rice's case; the 1989 law was *actually* applied in Rice's case, and the resulting sentence was "not void and the petitioner [was] not entitled to [*habeas corpus*] relief"), *perm. app. denied* (Tenn. 2004).

Relative to the egregiousness of the sentencing defect, our supreme court in *McLaney v. Bell*, 59 S.W.3d 90 (Tenn. 2001), said that an "illegal" sentence equates to a "jurisdictional defect." *Id.* at 92. We point out, however, that in *McConnell v. State*, 12 S.W.3d 795, 798 (Tenn. 2000), the supreme court said broadly, albeit in addressing different circumstances, that issues of "offender classification and release eligibility [are] non-jurisdictional." *See Hicks v. State*, 945 S.W.2d 706, 709 (Tenn. 1997) ("a plea bargained Range II sentence is valid when coupled with Range I release eligibility"); *Bland v. Dukes*, 97 S.W.3d 133, 135 (Tenn. Crim. App. 2002), *perm. app. denied* (Tenn. 2002) (aggravated robbery sentence upheld, despite sentence length falling in range above petitioner's range classification); *State v. Terry,* 755 S.W.2d 854, 855 (Tenn. Crim. App. 1988) (applying 1982 sentencing law and upholding plea-bargained kidnapping sentence, the

terms of which fit within the broad range of punishment for the offense class). Nevertheless, "[t]he 1989 Act establishes the outer limits within which [a sentence may be fashioned], and the courts are bound to respect those limits." *McConnell*, 12 S.W.3d at 799; *see, e.g., William Boyd v. State*, No. E1999-02179-CCA-R3-PC, slip op. at 5-6 (Tenn. Crim. App., Knoxville, Nov. 6, 2000) (100 percent release eligibility is beyond the outer limits of release eligibility percentage for even career offenders, and sentence is subject to *habeas corpus* attack); *see also Stephenson*, 28 S.W.3d at 911-12 (first-degree murder sentence expressed as life sentence without possibility of parole subject to *habeas corpus* relief when, at the time of the offense, a life sentence without the possibility of parole was not possible).[1]

The *McLaney* court stressed that when "the face of the judgment or the record of the underlying proceedings shows that the . . . sentence is illegal, such sentence creates a void judgment for which *habeas corpus* relief is available." *McLaney*, 59 S.W.3d. at 91. Thus, an illegal, jurisdictionally defective sentence is one that is in direct contravention of the sentencing act. *See id.* at 94. Such a sentence is void when it appears on the face of the record of the underlying proceeding. As such, it is justiciable in a *habeas corpus* proceeding. When such a void sentence is based upon a guilty plea, the *habeas corpus* court declares void and vacates the judgment but defers to the conviction court to address the petitioner's guilty plea that is left pending in the wake of the vacated judgment. *Id.* Then, upon remand to the conviction court, "either the plea may be withdrawn or the conviction remains intact." *Id.* at 94-95.

Turning to the case at bar, we reject the state's two bases for affirming the summary dismissal of the petition. First, although the transcript of the plea submission hearing is absent from the appellate record, we decline to presume that the record below supports the lower court's summary dismissal of the *habeas corpus* petition. The lower court apparently ruled on the petition without reviewing any such transcript, but on appeal the petitioner simply complains that the lower court erred in not granting a hearing, at which time the petitioner could have presented evidence to support his petition, presumably including a transcript of his plea submission hearing. We will not

---

[1]Regarding sentence length, it remains unclear at present whether the "outer limits" of a trial court's sentencing leeway begins at the maximum sentence in the designated Range or at the maximum sentence (in the highest Range) for the applicable offense Class. *William Boyd* interpreted *Mahler* and *Hicks* to mark the outer limits at the maximum sentence for the applicable offense Class and struggled to reconcile these cases with *McConnell's* statement that, although offender classification and release eligibility are non-jurisdictional, sentence length *is* jurisdictional. *William Boyd*, slip op. at 4. *See McConnell*, 12 S.W.3d at 798; *see Mahler*, 735 S.W.2d 226, 228 (Tenn. 1987) (approving sentence anomaly when sentence "was clearly within statutory limits fixed *for the offense*") (emphasis added). Although the author of the present opinion expressed the view in *William Boyd* that *McConnell* did not depart from *Mahler*, further parsing of *McConnell's* sentence-length-is-jurisdictional language suggests that *McConnell* marks the outer limits at the maximum in the *designated Range*. *See McConnell*,12 S.W.3d at 798 (characterizing *Mahler* as approving a sentence that "was within the statutory limits fixed for a Range II *offender*") (emphasis added). That said, we note that this court followed *William Boyd* in *Bland*, a case in which an extra-Range sentence was approved. *See Bland*, 97 S.W.3d at 135-36. The supreme court denied permission to appeal in *Bland*. *See id.* at 133 (permission to appeal denied December 9, 2002).

default the petitioner because the appellate record is deficient, when the deficiency is the result of a lack of an evidentiary hearing sought by the petitioner.[2]

Second, we cannot agree that the judgment's expression of a sentence in Range I subject to a 30-percent release eligibility was a clerical error. To be sure, this judgment form notation is erroneous. The homicide of which the petitioner was convicted occurred in March 1993. First-degree murder was then punishable only by a sentence of death or a sentence of imprisonment for life. Tenn. Code Ann. § 39-13-202(b) (1991) (amended 1995). A Range I, 30-percent sentence could be imposed for felonies in Classes A through E, but first-degree murder was not included within these Classes. *See id.*; *id.* §40-35-110 (1990), Sentencing Comm'n Comments. The then-applicable release eligibility for a first-degree murder life sentence was 60 percent of 60 years. *See id.* § 40-35-501(g) (1990) (amended 1995).

That said, we have determined that the judgment reference to a Range I, 30-percent sentence was not inadvertent; rather, it resulted from the terms of the written plea agreement. As did the *Ronald W. Rice* court, we have looked at the plea submission hearing transcript and the plea agreement to assess whether the erroneous sentencing term was merely a clerical error. To do this, we have consulted our own record of the petitioner's plea agreement and his November 30, 1993 plea submission hearing transcript, found in this court's record of the petitioner's post-conviction appeal, *see Ronald W. Rice v. State*, slip op. at 4, and we have noticed the content of those records, *see State ex rel. Wilkerson v. Bomar*, 213 Tenn. 499, 505, 376 S.W.2d 451, 453 (1964) (court may take notice of its records in an earlier proceeding in the same case); *State v. Jeff Cross*, No. 201 (Tenn. Crim. App., Knoxville, Jun. 26, 1986) (court may take judicial notice of its own records). The transcript reflects that the state and the petitioner, through counsel, agreed that the plea-bargained sentence would be imprisonment for life; however, in the process of administering a thorough explanation of the guilty-pleading petitioner's rights as mandated by Tennessee Rule of Criminal Procedure 11(c), the trial court informed the petitioner, "Now, that is as a range one standard offender, meaning that you would have to serve at least thirty percent of your sentence before you would be eligible for parole or any special programs." Moreover, the record of the petitioner's written plea agreement contained in the petitioner's post-conviction appeal indicates that the petitioner *agreed* to a life sentence to be served as a Range I offender with a 30-percent release eligibility. In this circumstance, the error in the petitioner's conviction judgment may not be relegated to clerical error unfit for *habeas corpus* treatment.

Thus, we are brought to the crux of the matter: whether the erroneous sentencing terms equate to a void sentence.

---

[2]The state cites *State v. Keen*, 996 S.W.2d 842 (Tenn. Crim. App. 1999), for the proposition that the appellate court presumes that the trial court's action was well-founded when the appellant fails to include in the appellate record the portion of the trial proceedings that forms the basis of the appeal. We note, however, that *Keen* was a direct appeal of a sentencing issue and is inapposite to whether the *habeas corpus* court should have granted an evidentiary hearing.

In that quest, we have considered whether, for purposes of *habeas corpus* relief, sentencing terms that express eligibility for release are central enough to the promulgation of the sentence to invalidate the sentence when those terms are erroneous. We know, for instance, that when *habeas corpus* relief is sought on the basis of a claimed expiration of sentence, the court disregards release eligibility terms in determining whether the sentence has expired. *See, e.g., Fred E. Smith v. State*, No. 02C01-9906-CC-00185, slip op. at 3 (Tenn. Crim. App., Jackson, Oct. 28, 1999) ("Parole does not cause the sentence to expire or terminate, but is merely a conditional release from confinement."), *perm. app. denied* (Tenn. 2000); *Carl Ed Leming v. State*, No. 03C01-9603-CC-00119, slip op. at 3 (Tenn. Crim. App., Knoxville, Apr. 22, 1997) ("[R]elease eligibility does not amount to an entitlement to immediate release."). Moreover, our supreme court has said that issues of release eligibility are non-jurisdictional. *See McConnell*, 12 S.W.3d at 709.

Although the writ of *habeas corpus* generally may not be used to address an anomalous expression of release eligibility that is within the broad statutory ambit afforded the sentencing court, this court has declared illegal and void judgments in which release-eligibility provisions fell beyond the outer limits of statutory authority. In *William Boyd*, this court held that an expression of a 100-percent release eligibility for especially aggravated sexual exploitation of a minor was unavailable to the sentencing court. *William Boyd*, slip op. at 5-6. Because the 100-percent provision of Code section 40-35-501(i) does not apply to Boyd's conviction offense, the sentencing court was not empowered to impose a release-eligibility percentage higher than 60 percent. *Id.*[3] In *Mark L. Grimes v. Fred Rainey*, No. W2002-01683-CCA-R3-CO (Tenn. Crim. App., Jackson, Aug. 5, 2003), this court reversed the summary denial of *habeas corpus* relief upon finding that Grimes's 30-percent release eligibility for multiple rapes was "in direct contravention with Tennessee Code Annotated section 39-13-523, which mandates service of such sentences at 100 [percent]." *Mark L. Grimes*, slip op. at 4; *see also Mitchell Tarver v. State*, No. W2002-01662-CCA-R3-CO (Tenn. Crim. App., Jackson, Oct. 21, 2003) (holding similarly to *Mark L. Grimes*). In *Lloyd Paul Hill v. State*, No. M2000-01428-CCA-R3-PC (Tenn. Crim. App., Nashville, Aug. 30, 2001), this court in a post-conviction appeal *sua sponte* ordered relief from child rape sentences adjudged to be illegal because the provisions for a 30-percent release eligibility were "in contravention of [Code section 39-13-523]." *Lloyd Paul Hill*, slip op. at 5-7. In *Mario Lambert v. Jack Morgan*, No. M2002-00172-CCA-RM-PC (Tenn. Crim. App., Nashville, Mar. 22, 2002), this court reversed the denial of *habeas corpus* relief upon finding that, following Lambert's conviction of second-degree murder, the trial court sentenced him to serve his fifteen-year sentence as a Range I offender with a release-eligibility of 30 percent. *Mario Lambert*, slip op. at 2. Although second-degree murder is "on the chart" as a Class A offense, *see* Tenn. Code Ann. § 39-13-210(b) (2003), second-degree murder "is one of the enumerated offenses [in Code section 40-35-501(i)] for which there is no release eligibility." *Id.* The court held that Lambert "could not legally be sentenced as a Range I, standard offender with a thirty percent release eligibility." *Id.*

---

[3]In a given offense Class, a release eligibility of sixty percent, applicable to a Range III offender, is the maximum percentage for "charted" offenses. *See* Tenn. Code Ann. § 40-35-501(f) (2003); *see id.* § 40-35-101(2003), Sentencing Comm'n Comments (containing a graphic representation of the sentencing chart).

The release-eligibility terms in the present case place it in a similar posture. As we have explained, the applicable sanctions for first-degree murder are not to be found in the ordinary offender-Range/offense-Class matrix. Range I, 30-percent treatment of one convicted of first-degree murder simply was and is not available.

We conclude from the foregoing that, not only was the petitioner entitled to a hearing on his *habeas corpus* petition, but he was entitled to issuance of the writ as a matter of law pursuant to *McLaney*. We remand the case to the Hardeman County Circuit Court, which is the *habeas corpus* court. That court shall vacate the judgment of conviction in the Shelby County Criminal Court. The *habeas corpus* court shall certify its order to the conviction court, which shall proceed according to *McLaney*. If, in view of the vacating of the conviction judgment, the petitioner seeks to withdraw his guilty plea, the conviction court shall resolve the withdrawal issue and proceed accordingly. *See McLaney*, 59 S.W.3d at 94-95.

_____
JAMES CURWOOD WITT, JR., JUDGE