IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 9, 2004

## FRANK A. BARNARD v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Hickman County**
**No. 03-5074C-II     Russ Heldman, Judge**

_____

### No. M2003-02809-CCA-R3-HC - Filed June 29, 2004

_____

The petitioner, Frank A. Barnard, was convicted in 1992 of first degree murder, aggravated robbery, and aggravated sexual battery, for which he was sentenced, respectively, to sentences of life, eight years, and ten years, with the latter sentence to be served consecutively to the first two. In a petition for writ of habeas corpus, he claimed that the trial court was without jurisdiction to impose judgment for the murder conviction. The trial court dismissed the petition, and this timely appeal followed. After review, we affirm the dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

Frank A. Barnard, Turney Center Industrial Prison, Only, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; and David H. Findley, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The facts upon which the petitioner's convictions were based were set out by this court in our consideration of his direct appeal:

> On the morning of September 18, 1990, the [petitioner] was driving on Dickerson Road in Nashville, Tennessee. He was accompanied by Shane Janeksela and Robert Richmond, co-defendants in this case. The men stopped to pick up Mary Ann Poole, a prostitute who was working along the road, and then proceeded to Mr. Janeksela's house ostensibly to engage in sex.

Although testimony differs as to each man's involvement, sometime during the course of the morning Ms. Poole was murdered.

Shane Janeksela testified that upon arriving at his residence, [the petitioner] handed him $20.00 and told him to take Ms. Poole to the bedroom. Janeksela led Ms. Poole to the bedroom and gave her the $20.00. She began to perform oral sex on him at which time the [petitioner] and Robert Richmond entered the room. [The petitioner] handcuffed Ms. Poole to the bed while Richmond covered her head with a sheet. They demanded that she give them her money, but she claimed to be broke. [The petitioner] then found the $20.00 that Janeksela had given her and all three men then began to beat her. Afterwards, [the petitioner] and Richmond removed her clothes. [The petitioner] placed a plastic bag over his fist and attempted to forcibly insert his fist into her vagina. He then held her down as Richmond sought to insert a wooden fork into her vagina. When this failed Richmond began to wildly punch and kick Ms. Poole whereupon the [petitioner] and Janeksela left the room.

Richmond later entered the living room where the two other men were sitting. He asked the [petitioner] to break the victim's neck. [The petitioner] refused but instructed Richmond on how to do so. The three men then returned to the bedroom, and Richmond began twisting the victim's neck from side to side. [The petitioner] and Janeksela left the room. At this time, Janeksela informed the [petitioner] that he was extremely upset and did not want this to happen in his house. [The petitioner] told him not to worry. Soon thereafter, Richmond began playing loud music. Janeksela and [the petitioner] reentered the bedroom and saw Richmond standing over the victim. He was singing. They turned the music off and Richmond again asked [the petitioner] how to kill the victim. [The petitioner] told him to either "choke her" or "smother her." Richmond then placed a plastic bag over her head, and [the petitioner] and Janeksela left the room. Later, Richmond walked out of the bedroom and informed the men that Ms. Poole was dead. According to Janeksela, the [petitioner] and Richmond placed the victim's body in Janeksela's car, and the three men drove to the [petitioner's] home. [The petitioner] refused to go any further. Richmond and Janeksela then drove to an abandoned area and dumped the body in the woods.

Grady Eleam, a detective with the Metropolitan Police Department, testified that he took a tape-recorded statement from [the

-2-

petitioner] concerning the death of Mary Ann Poole. The taped statement was then played to the jury. In the statement, [the petitioner] admitted placing a pair of handcuffs on the victim and later removing the handcuffs. He denied any other involvement with the victim, but stated that he witnessed Richmond and Janeksela beat her. [The petitioner] also denied assisting in the removal and disposal of the victim's body, although he was aware that the body was in the car while he was being driven home.

[The petitioner] testified at trial. He acknowledged having been with Janeksela and Richmond on the morning in question. He also admitted placing a pair of handcuffs on the victim because he believed "they were into kinky sex." He stated, however, that the victim consented to the use of the handcuffs. Afterwards, [the petitioner] went into the living room for a few minutes, reentered the bedroom to remove the handcuffs, and immediately returned to the living room. He remained there until Janeksela and Richmond informed him that they had killed the victim. [The petitioner] testified that because there was loud music being played at the time he had no knowledge of what was taking place in the bedroom. Upon being informed the victim was dead, he asked to be taken home. [The petitioner] denied any involvement in the removal and disposal of the victim's body.

State v. Barnard, 899 S.W.2d 617, 620-21 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1994).

On July 31, 1997, the petitioner filed a petition for post-conviction relief, which the post-conviction court dismissed as untimely and this court affirmed. See Frank Barnard v. State, No. 01C01-9807-CR-00296, 1999 WL 820854, at *1 (Tenn. Crim. App. Oct. 13, 1999).

## ANALYSIS

In his petition for writ of habeas corpus, filed on October 3, 2003, the petitioner argued that the trial court was without jurisdiction to impose sentence following his conviction for "first degree felony murder" because "the trial court lacked lawful jurisdiction to impose the judgment because of a fatal variance between the indictment and proof at trial, in that, the State offered no proof that Petitioner killed 'in the perpetration of or attempt to perpetrate a robbery,' or that Petitioner 'intended to commit the alleged robbery.'" He argues "that when the trial court granted the new trial on the robbery offense, this had the force and effect of nullifying the jury's verdict on the felony murder offense." As his second claim, the petitioner argues that his murder conviction is void because "[t]he face of the record, and the facts of this case, clearly reveals that Petitioner was convicted for this offense under the theory of criminal responsibility," and the trial court erred, as

to this instruction, when it failed to "instruct the jury on the 'natural and probable consequence rule.'"

As to the petitioner's first argument, the State responds that the trial court did not find that the evidence was insufficient as to the robbery conviction, and, further, that his claims as to the felony murder conviction are misplaced because the trial court merged that conviction with the petitioner's conviction for first degree premeditated murder. See Barnard, 899 S.W.2d at 620 n.1. As to the petitioner's claim that the trial court erred in not instructing as to the natural and probable consequences rule, the State responds that, even if this were error, it would not result in the judgment being void, and, further, such a claim can be presented only in a post-conviction petition and not a petition for writ of habeas corpus.

We will consider these arguments.

It is well-established in Tennessee that the remedy provided by a writ of habeas corpus is limited in scope and may only be invoked where the judgment is void or the petitioner's term of imprisonment has expired. State v. Ritchie, 20 S.W.3d 624, 629 (Tenn. 2000); State v. Davenport, 980 S.W.2d 407, 409 (Tenn. Crim. App. 1998). A void, as opposed to a voidable, judgment has been defined by our supreme court as "one in which the judgment is facially invalid because the court did not have the statutory authority to render such judgment." Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998); see also Taylor v. State, 995 S.W.2d 78, 83 (Tenn. 1999). The judgment of a court of general jurisdiction is conclusive and presumed to be valid, and such a judgment can only be impeached if the record affirmatively shows that the rendering court was without personal or subject matter jurisdiction. Archer v. State, 851 S.W.2d 157, 162 (Tenn. 1993). Thus, habeas corpus relief is available only when "'it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered' that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment . . . has expired." Archer, 851 S.W.2d at 164 (citation omitted).

To obtain habeas corpus relief, the petitioner must show by a preponderance of the evidence that his sentence is void and not merely voidable. See Davenport, 980 S.W.2d at 409. Consequently, a petitioner cannot collaterally attack a facially valid judgment of the trial court in a petition for habeas corpus relief. Archer, 851 S.W.2d at 162. The proper means of challenging a facially valid judgment based on a constitutional violation is a petition for post-conviction relief. Lewis v. Metro. Gen. Sessions Court for Nashville, 949 S.W.2d 696, 699 (Tenn. Crim. App. 1996); Fredrick v. State, 906 S.W.2d 927, 929 (Tenn. Crim. App. 1993).

In reviewing the petitioner's claims, we note that most of his complaints are directed to his conviction for felony murder. However, as this court noted in his appeal of the dismissal of his post-conviction petition as untimely, the petitioner's conviction for felony murder was merged with his conviction for first degree premeditated murder, because both arose from the same offense. See Frank Barnard, 1999 WL 820854, at *1. Thus, his claim that there was a variance between the indictment and proof is misplaced, there being in his view no proof that he killed in committing a

robbery, for this argument presupposes that he is serving a sentence only for felony murder, which is not the case.  Likewise, the claim that the trial court's granting a new trial as to the robbery conviction is without merit, for it, also, ignores that his conviction is for first degree murder after the merger of first degree premeditated murder and felony murder.  Finally, his claim that his conviction is void because the trial court erred in not instructing as to the natural and probable consequences rule is without merit for it, too, presupposes that his conviction is only for felony murder.  Further, challenges to a jury instruction are not cognizable in a habeas corpus proceeding.  See Chester Ray Hall v. David Mills, Warden, No. 01C01-9510-CV-00339, 1996 WL 429170, at *1 (Tenn. Crim. App. Aug. 1, 1996), perm. to appeal denied (Tenn. Dec. 2, 1996).

### CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the trial court's dismissal of the petition for writ of habeas corpus.

_____
ALAN E. GLENN, JUDGE