IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 14, 2006

## CHARLES MANNING v. JACK MORGAN, WARDEN

**Direct Appeal from the Criminal Court for Morgan County**
**No. 9082     E. Eugene Eblen, Judge**

---

**No. E2005-00701-CCA-R3-HC - Filed June 13, 2006**

---

Petitioner, Charles Manning, filed a Petition for Writ of Habeas Corpus, attacking his two convictions for second degree murder. Following a hearing, the trial court denied any relief to Petitioner. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which and DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Joe H. Walker, District Public Defender; Walter B. Johnson, II, Assistant Public Defender; Harriman, Tennessee, for the appellee, Charles Manning.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; Scott McCluen, District Attorney General; and John Bledsoe, Assistant District Attorney General

**OPINION**

## I. Background

According to the petition for writ of habeas corpus, Petitioner was arrested and charged with two counts of first degree murder on April 24, 1981. On February 27, 1987, pursuant to a negotiated plea agreement, Petitioner pled guilty to two counts of second degree murder and was sentenced as an especially aggravated, Range II offender, to serve fifty (50) years for each offense, to be served concurrently, with a forty (40) percent release eligibility status. On June 14, 2004, he filed a petition for writ of habeas corpus challenging the validity of his convictions for second degree murder. In his petition, he alleged that his sentence was illegal and void because it was outside the range of sentencing allowed by the statutory sentencing guidelines in effect at the time of his sentencing. Specifically, he argued that under the sentencing guidelines, the release percentage at the time of his sentencing was thirty-five percent for an especially aggravated Range II offender, rather than the forty percent he was sentenced to serve, rendering his conviction illegal and void. In response to his

petition, the State filed a motion to dismiss. In its order dismissing the petition, the trial court specifically found that Petitioner "failed to establish that the trial court was without jurisdiction or authority to sentence him or that his sentence had expired."

## II. Analysis

Article I, section 15 of the Tennessee Constitution guarantees the right to seek habeas corpus relief. Tennessee Code Annotated sections 29-21-101 *et seq.* codify the applicable procedures for seeking a writ. While there is no statutory time limit in which to file for habeas corpus relief, Tennessee law provides very narrow grounds upon which such relief may be granted. *Taylor v. State,* 995 S.W.2d 78, 83 (Tenn. 1999). A habeas corpus petition may be used only (1) to contest void judgments which are facially invalid because the convicting court was without jurisdiction or authority to sentence a defendant; or (2) when the defendant's sentence has expired. *Archer v. State,* 851 S.W.2d 157, 164 (Tenn. 1993).

Generally, a judgment imposed by a trial court in direct contravention of express statutory provisions regarding sentencing is illegal and is subject to being set aside at any time, even after it has become final. *See State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978). Nevertheless, our supreme court has held that "a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility," even when the sentence directly contravenes statutory guidelines. *Hicks v. State*, 945 S.W.2d 706, 709 (Tenn. 1997). Specifically, the court has held that parties in a criminal proceeding are precluded from attacking on appeal the agreed range imposed by the trial court, "where the parties negotiate in good faith and there are no allegations of fraud or misfeasance." *Hicks*, 945 S.W.2d at 708. In other words, a defendant can waive the range classification as part of a negotiated guilty plea agreement. Thus, the State and defendants may readily use offender classification and release eligibility as subjects of plea bargain negotiations. *McConnell v. State*, 12 S.W.3d 795, 798 (Tenn. 2000).

This reasoning extends, and actually originated, with those cases decided under our 1982 sentencing guidelines. In 1987, our supreme court decided *State v. Mahler,* 735 S.W.2d 226 (Tenn. 1987). Mahler was indicted for first-degree murder. The parties agreed to a guilty plea to second-degree murder in exchange for the State's recommendation of a fifty-year sentence as a Range II offender. The defendant, although he lacked the criminal history justifying a Range II classification, agreed to the sentence. The agreed upon sentence was imposed, and six months later Mahler filed a post-conviction petition alleging that the sentence was invalid and that his counsel was ineffective for failing to advise him of that fact. The court affirmed the sentence, and noted that under the law in effect at that time, second-degree murder carried a punishment range from ten years to life. T.C.A. §§ 39-2-212 & 40-35-109 (1982) (repealed). Because the sentence imposed was clearly within statutory limits, the court upheld the sentence. *Mahler*, 735 S.W.2d at 227. The court also held that any question as to Mahler's classification as a Range II offender or his release eligibility percentage had been waived pursuant to his guilty plea. *Id*. at 228.

In *State v. Terry*, 755 S.W.2d 854 (Tenn. Crim. App. 1988), the question likewise arose under the Criminal Sentencing Reform Act of 1982. Pursuant to a plea bargain agreement, Terry pled guilty to one count of simple kidnapping and one count of aggravated assault. In exchange for his plea, he received a Range I sentence of ten years for kidnapping and a consecutive Range I sentence of five years for aggravated assault. Under the law at the time, the punishment range for kidnapping was two to ten years, and a Range I sentence was two to six years. T.C.A. §§ 39-2-302 & 40-35-109 (1982) (repealed). After the final judgment, the defendant filed a motion to correct the "illegal" kidnapping sentence. This Court upheld the sentence because it was within the statutory limits for kidnapping. *Terry*, 755 S.W.2d at 855. Relying on *Mahler*, we said that "[a]ny irregularity as to classification or release eligibility was waived by the plea of guilty knowingly and voluntarily entered." *Id.* at 855.

In 1981, at the time of Petitioner's offense, second degree murder was a Class X felony punishable with a sentence range of ten years to life. T.C.A. § 39-2403(b) (1980 Supp.), 39-2408 (1975). Class X felonies were governed by the Class X Felonies Act until the enactment of the Criminal Sentencing Reform Act of 1982 (the 1982 Act). However, the 1982 Act provided that "[f]or all persons who committed crimes prior to July 1, 1982, the prior law shall apply and shall remain in full force and effect in every respect, including but not limited to sentencing, parole and probation." T.C.A. § 40-35-112(a) (1982). At that time, the 1982 Act mandated that a defendant who was sentenced as a persistent offender or for an especially aggravated offense should receive a Range II sentence, T.C.A. § 40-35-109(c) (1982), with release eligibility at forty percent. T.C.A. § 40-35-501(d). The 1982 Act was amended in 1985, prior to Petitioner's sentencing, to add: "The release eligibility date, manner of service of sentence, and the release and parole of any person convicted and sentenced as a Class X offender for a crime committed before July 1, 1982, shall be governed by part 5 of this chapter." T.C.A. § 40-35-112(c) (1986 Supp.). The amendments also provided that release eligibility for a Range II offender would occur after thirty-five percent of the sentence had been served. T.C.A. § 40-35-501(d) (1986 Supp.). The amendments further stated that a defendant sentenced as a Range II offender for both an especially aggravated offense and as a persistent offender was eligible for release after forty percent of his sentence was served. T.C.A. § 40-35-501(e).

The negotiated plea agreement reached by Petitioner and the State under the 1982 Act provides for an especially aggravated offender, Range II sentence, with a forty percent release eligibility date. T.C.A. § 40-35-501(e). The relevant portion of the guilty plea proceeding states as follows:

THE COURT:        Is this your decision to enter these two guilty pleas?

[PETITIONER]:        Yes, sir, it is.

THE COURT:        Is it voluntary?

[PETITIONER]:        Yes, sir, it is.

| | |
|---|---|
| THE COURT: | Nobody has forced your [sic] or threatened you? |
| [PETITIONER]: | Well, it's - - it's plea bargaining arrangement, Your Honor. |
| THE COURT: | Right. But has anybody threatened to do something to you, if you don't plead guilty? |
| [PETITIONER]: | No, sir. No, sir, they haven't. |
| THE COURT: | Have you been forced or coerced in any way to enter this plea? |
| [PETITIONER]: | No, sir, I haven't. |
| THE COURT: | Have you been promised anything in order to get you to enter this plea? |
| [PETITIONER]: | No, sir. Nothing at all. |
| THE COURT: | I've had two forms submitted to me. One, is the plea of guilty and the other one is Motion of the defendant to waive a jury. Both of these forms appear to have your signature on them. Did you sign these forms? |
| [PETITIONER]: | Yes, sir, I did. Both of them. |
| THE COURT: | Did you read them, or have them read to you, or have them explained to you? |
| [PETITIONER]: | Yes, sir. Entirely. |
| THE COURT: | Do you feel like you understand these forms? |
| [PETITIONER]: | Yes, sir, I do. |
| THE COURT: | Is there any question you'd like to ask me about these forms? |
| [PETITIONER]: | Nothing at all, sir. |

THE COURT:    Mr. Charles Manning, are you telling the Court that you're pleading guilty to Murder in the Second Degree in Count Number 1, of Case Number 70827?

[PETITIONER]:    Yes, sir.

THE COURT:    Are you pleading guilty because you really are guilty?

[PETITIONER]:    It's plea bargaining, Your Honor.

THE COURT:    Are you pleading guilty rather than take your chance receiving a greater sentence?

[PETITIONER]:    Yes, sir.

THE COURT:    Are you telling the Court that you're pleading guilty to Count Number 2 to Murder in the Second Degree?

[PETITIONER]:    Yes, sir.

THE COURT:    Are you pleading guilty rather than take your chan[c]es of receiving a greater sentence as a - - as a result of plea bargaining?

[PETITIONER]:    Yes, sir.

THE COURT:    Does both the State and defense stipulate to enough facts to constitute Murder in the Second Degree in both Counts 1 and 2 of Case Number 7082?

GENERAL CROCKETT:    Yes, Your Honor.

MR. WILSON:    Yes, Your Honor.

THE COURT:    Either Attorney General want to ask Mr. Manning any questions?

GENERAL CROCKETT:    No, Your Honor.

THE COURT:    Misters Wilson and Byrd are both appointed, right?

MR. BYRD:    Uh huh (affirmative).

MR. WILSON:            Yes, Your Honor.

THE COURT:             Mr. Manning, do you have any criticism of the way that Mr. Wilson or Mr. Byrd has handled your case?

[PETITIONER]:          None at all, sir.

THE COURT:             Either Mr. Byrd or Mr. Wilson want to ask Mr. Manning any questions?

MR. WILSON:            No, Your Honor.

MR. BYRD:              No, Your Honor.

THE COURT:             Mr. Manning, do you have anything you would like to say before I sentence you?

[PETITIONER]:          No, sir.

THE COURT:             Mr. Manning, in Count Number 1 of Case Number 7082, on the docket of this court, which charges you with Murder in the Second Degree, the Court find[s] you guilty of Murder in the Second Degree, and sets your punishment at a determinate sentence of fifty (50) years in the State Penitentiary. And you're also rendered infamous. This is a - - is a 40% offender, and that would be - - what range will we put him in, gentlemen? Or do we?

MR. WILSON:            Range II?

GENERAL BROWN:         That would be Range II with whatever it takes to be a 40% offender.

GENERAL CROCKETT:      That's right.

THE COURT:             Especially aggravated offense or - - that's not a persistent, is it?

GENERAL BROWN:         By plea agreement, it's whatever it takes to be a 40% offender. Now, one of those, you told me has been changed to a 35%.

THE COURT: Might have been. I've been told it has. I - - I read the law, but it's been so long since I read it. So - - what should I put on the Judgment Form here? Especially aggravated offender, Range II? Is that agreeable with - - I'm going to block off . . .

MR. WILSON: I think you almost have to do it in a Range II, don't you?

THE COURT: Yeah.

MR. BYRD: In order for it to come within a 40%.

THE COURT: You are sentence to fifty (50) years, as an especially aggravated offender, Range II, 40% offender. And you're also rendered infamous. . . .

THE COURT: And Mr. Charles Manning, in Count Number 2, which charges you with murder in the First Degree, the Court finds you guilty of Murder in the Second Degree, and sets your punishment at a fifty (50) year sentence, as an especially aggravated offender, Range II, 40% offender. The penitentiary sentence to run concurrently with the penitentiary sentence in Count Number 1. You're also rendered infamous in this count. . . .

[PETITIONER]: Thank you, sir.

The record reflects that Petitioner entered a knowing and voluntary guilty plea in exchange for a second degree murder charge, which carried a lighter punishment than his original first degree murder charge. The sentence agreed upon was fifty years and "whatever it takes to be a 40% offender." There was extensive discussion about the forty percent release eligibility such that Petitioner was aware that he was agreeing to this release status. He was given ample opportunity to ask questions or raise the issue if the forty percent release status was not what he understood to be the plea agreement. As stated above, under the terms of the 1982 Sentencing Act, the range of punishment for second degree murder was ten years to life. As such, the fifty year sentence imposed on Petitioner was within the statutory limits and was clearly valid. *See Mahler,* 735 S.W.2d at 227. Any challenge to Petitioner's release eligibility percentage was waived pursuant to his knowing and voluntary guilty plea. *Id.* at 228; *Hicks*, 945 S.W.2d at 709. The plea agreement in Petitioner's case is a classic example of a defendant and the State using "offender classification and release eligibility as subjects of plea bargain negotiations." *McConnell*, 12 S.W.3d. at 798. As noted above, such

-7-

judgments are permissible and not void. *Id*. Thus, Petitioner's judgment form reflects a valid, legal sentence. Petitioner is not entitled to habeas corpus relief.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court dismissing the petition for writ of habeas corpus relief.

_____
THOMAS T. WOODALL, JUDGE