# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 18, 2012

## JASON CLINARD v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Hickman County**
**No. 12-CV-8    Robbie T. Beal, Judge**

**No. M2012-00839-CCA-R3-HC - Filed September 27, 2012**

The Petitioner, Jason Clinard, appeals the Hickman County Circuit Court's summary dismissal of his petition seeking a writ of habeas corpus. The Petitioner, who was convicted of first degree murder, contends that his conviction was illegal because he was sentenced to life with the possibility of parole, which he states contravenes statute. Upon a review of the record in this case, we conclude that the habeas corpus court properly denied the petition for habeas corpus relief. Accordingly, we affirm the judgment of the habeas corpus court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Jason Clinard, Only, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee and Mark A. Fulks, Assistant Attorneys General; and Kim Helper, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

A Stewart County jury convicted the Petitioner of first degree premeditated murder and imposed a sentence of life imprisonment. The Petitioner appealed his conviction and sentence, and this Court summarized the facts presented at trial as follows:

> On March 2, 2005, the 14-year-old [Petitioner] shot and killed his school bus driver, Joyce Gregory, as she sat aboard the bus in front of his house. On the day before the shooting, the victim had reported to the

vice-principal of Stewart County High School, where the [Petitioner] was a freshman, that the defendant had been "dipping snuff on the bus." As a result of the victim's report, the defendant received "in-school suspension." The evidence established that the March 1, 2005 incident was not the first time the [Petitioner] had violated the school bus rules. He had previously been suspended from riding the bus for fighting and had only returned to riding the bus on February 25, 2005. According to the [Petitioner]'s 16-year-old nephews, Joseph and Bobby Lee Fulks, the [Petitioner] believed that the victim was "picking on him" and he "didn't like [the victim] too much."

On the morning of the shooting, the [Petitioner] rose as usual, readied himself for school, and ate breakfast. As the three boys walked to the bus, the [Petitioner] insisted that the Fulks brothers board the bus ahead of him. As the brothers walked to the back of the bus, the [Petitioner] aimed a .45 caliber semi-automatic handgun and fired six jacketed hollow point bullets at the victim. Three shots struck the victim in the torso. The first shot entered the upper right side of the victim's back and exited through the upper left side of the back. The second shot struck the victim in the right side of her chest and traveled through her right lung, trachea, and left lung before coming to rest in the upper left side of her back. The third shot also struck the victim in the right side of her chest and then traveled through her right lung, spinal column, and aorta before becoming lodged in the periaortic tissue.

After being shot, the victim attempted to radio for help but succumbed to her injuries before she was able to do so. Meanwhile, the [Petitioner] ran around the back of his house and into the woods as Joseph Fulks went inside to telephone 9-1-1. After the victim's foot slipped from the brake, Bobby Fulks steered the bus toward a telephone pole to keep it from going over a steep hill. Bobby Fulks and other high school students helped the remainder of the children out of the emergency exit and into a nearby residence.

By the time the first police officer arrived on the scene, the victim had died. After the officer confirmed that the victim was dead, he saw the [Petitioner]'s father, Charlie Clinard, walking toward the bus. Mr. Clinard told the officer that the [Petitioner] had shot the victim and retreated to the woods behind the family residence. Officers later reached the [Petitioner] on his cellular telephone, and he agreed to surrender. Shortly thereafter, the

2

[Petitioner] emerged from the woods carrying the .45 caliber handgun in one hand and the magazine in the other. He laid both on the ground and surrendered to the authorities.

At the conclusion of the trial, the jury convicted the [Petitioner] of the single, charged offense of first degree premeditated murder. Because the State had not sought a sentence of life imprisonment without the possibility of parole, the [Petitioner] received the statutorily mandated sentence of life imprisonment. *See* T.C.A. §§ 39-13-202(a)(1); -204 (2006)

*State v. Jason Clinard*, M2007-00406-CCA-R3-CD, 2008 WL 4170272, at *1-2 (Tenn. Crim. App., at Nashville, Sept. 9, 2008), *no Tenn. R. App. P. 11 application filed* (footnote omitted).

On January 29, 2009, the Petitioner filed a petition for post-conviction relief. The post-conviction court appointed the Petitioner counsel, who amended the petition. The petition alleged that the Petitioner's constitutional rights had been violated and that he had received the ineffective assistance of counsel. The trial court dismissed the petition after a hearing.

The Petitioner filed a pro se petition for habeas corpus relief on February 15, 2012, alleging that his sentence was illegal. The State filed a motion to dismiss the petition. In its motion to dismiss, the State posited that the Petitioner had failed to satisfy the mandatory prerequisites to habeas corpus review and had failed to show that he was entitled to relief.

The habeas corpus court summarily dismissed the petition, finding that "the petition [wa]s not verified by affidavit and, in any event, the [P]etitioner ha[d] failed to show that his sentence [wa]s illegal."

## II. Analysis

On appeal, the Petitioner maintains that his sentence is illegal. He asserts that his sentence of life imprisonment for the offense of first degree murder is in direct contravention of Tennessee Code Annotated section 40-35-501(i)(1). The Petitioner points out that the statute states that "[t]here shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (i)(2). The person shall serve one hundred (100%) of the sentence imposed . . . ." T.C.A. § 40-35-501(i)(1) (2010). The Petitioner cites a case from this Court, which he asserts holds that a defendant convicted of first degree murder and sentenced to life must serve at least

3

fifty-one years before becoming eligible for parole. This, he says, is in direct contravention of Tennessee Code Annotated section 40-35-501(i)(1)(2). The State counters first that the petition does not comport with the mandatory procedural requirements for an application for habeas corpus relief because it does not include a verified affidavit in support of the petition. The State further asserts that the Petitioner does not show that the Petitioner is entitled to relief. We agree with the State.

Article I, section 15 of the Tennessee Constitution guarantees the right to seek habeas corpus relief. *See Faulkner v. State*, 226 S.W.3d 358, 361 (Tenn. 2007). Although the right is guaranteed in the Tennessee Constitution, the right is governed by statute. T.C.A. § 29-21-101 to -130 (2006). The determination of whether habeas corpus relief should be granted is a question of law and is accordingly given *de novo* review. *Smith v. Lewis*, 202 S.W.3d 124, 127 (Tenn. 2006); *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000). Although there is no statutory time limitation which applies to bar the filing of a habeas corpus petition, the grounds upon which relief can be granted are very narrow. *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999). It is the burden of the petitioner to demonstrate by a preponderance of the evidence that "the sentence is void or that the confinement is illegal." *Wyatt v. State*, 24 S.W.3d 319, 322 (Tenn. 2000). In other words, the very narrow grounds upon which a habeas corpus petition can be based are as follows: (1) a claim there was a void judgment which was facially invalid because the convicting court was without jurisdiction or authority to sentence the defendant; or (2) a claim the defendant's sentence has expired. *Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000); *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993). "An illegal sentence, one whose imposition directly contravenes a statute, is considered void and may be set aside at any time." *May v. Carlton*, 245 S.W.3d 340, 344 (Tenn. 2008) (citing *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978)). In contrast, a voidable judgment is "one that is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." *State v. Ritchie*, 20 S.W.3d 624, 630-31 (Tenn. 2000) (citations omitted); *see also Taylor*, 995 S.W.2d at 83.

## A. Procedural Requirements

A petition for a writ of habeas corpus must comply with several strict procedural requirements. Tennessee Code Annotated section 29-21-107(a) provides that, "Application for the writ shall be made by petition, signed either by the party for whose benefit it is intended, or some person on the petitioner's behalf, and verified by affidavit." The petitioner bears the burden of providing the following in a petition for habeas corpus relief:

(1) That the person in whose behalf the writ is sought, is illegally restrained of liberty, and the person by whom and place where restrained, mentioning the name of such person, if known, and, if unknown, describing the person with as much particularity as practicable;

(2) The cause or pretense of such restraint according to the best information of the applicant, and if it be by virtue of any legal process, a copy thereof shall be annexed, or a satisfactory reason given for its absence;

(3) That the legality of the restraint has not already been adjudged upon a prior proceeding of the same character, to the best of the applicant's knowledge and belief; and

(4) That it is first application for the writ, or, if a previous application has been made, a copy of the petition and proceedings thereon shall be produced, or satisfactory reasons be given for the failure so to do.

T.C.A. § 29-21-107(b) (2006). "[T]he procedural provisions of the habeas corpus statutes are mandatory and must be followed scrupulously." *Archer*, 851 S.W.2d at 165. A habeas corpus court may summarily dismiss a habeas corpus petition if the petitioner fails to comply with the mandatory procedural requirements for seeking habeas corpus relief, and a court may dismiss the petition without the appointment of counsel and without a hearing. *Summers*, 212 S.W.3d at 260-61; *see generally* T.C.A. § 29-21-107 (2006).

This Court has previously held that summary dismissal of a petition for habeas corpus relief was proper when the petition was not verified by affidavit. *Darrell Lamar Fritts v. Howard Carlton, Warden*, No. E2010-01574-CCA-R3-HC, 2011 WL 2416863, at *2 (Tenn. Crim. App., at Knoxville, June 13, 2011), *perm. app. denied* (Tenn. Sept. 21, 2011) (dismissing of a pro se petition for habeas corpus relief not verified by affidavit); *Anthony Jackson v. State*, No. M2004-01997-CCA-R3-HC, 2005 WL 176500, *1-2 (Tenn. Crim. App., at Nashville, Jan. 24, 2005), *perm. app. denied* (Tenn. Aug. 22, 2005) (affirming trial court's summary dismissal of a habeas corpus petition where the pro se petitioner failed to verify his habeas corpus petition by affidavit and also failed to state the legality of the restraint). Reviewing the record, we agree that there is no verified affidavit attached to the Petitioner's petition for habeas corpus relief. The record does contain a statement by the Petitioner, but it is not a verified affidavit. We conclude that, on these grounds, the habeas corpus petition was properly dismissed by the habeas corpus court without a hearing.

## B. Legality of Sentence

Because the habeas corpus court, in its order dismissing the Petitioner's petition for habeas corpus relief, found that "the [P]etitioner h[ad] failed to show that his sentence [wa]s illegal," we will also address that issue on its merits. In *Davis v. State*, our Supreme Court discussed habeas corpus relief in the context of an illegal sentence:

> With respect to sentencing, we have recognized that "[s]entencing is jurisdictional and must be executed in compliance with the [applicable Sentencing] Act." *McConnell*, 12 S.W.3d at 798. Thus, a trial court lacks the jurisdiction or authority to impose on a defendant a sentence that (1) is not authorized by the applicable statutes, *see, e.g., May v. Carlton*, 245 S.W.3d 340, 348-49 (Tenn. 2008) (granting habeas corpus relief to convicted felon declared infamous for a crime not listed as infamous under the statute); *Stephenson*, 28 S.W.3d at 912 (holding habeas corpus attack proper where defendant's sentence of life without parole was not statutorily authorized and was therefore illegal), or (2) directly contravenes an applicable statute, *see, e.g., Smith v. Lewis*, 202 S.W.3d 124, 127–28 (Tenn. 2006) (holding sentence illegal because it provided for a [Release Eligibility Date ("RED")] where the applicable statute expressly prohibited early release eligibility); *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn.1978) (holding sentence imposed in direct contravention of express statutory provisions "a nullity"). This Court considers unauthorized sentences, including those that are in direct contravention of an applicable statute, to be illegal as opposed to merely erroneous. *See Summers v. State*, 212 S.W.3d 251, 256 (Tenn. 2007) (recognizing that a judgment rendered without statutory authority is void and that "[a] sentence imposed in direct contravention of a statute is void and illegal"). Habeas corpus relief may be granted on illegal sentences but not on those that are merely erroneous. *Archer*, 851 S.W.2d at 161.
>
> Examples of illegal sentences include (1) a sentence imposed pursuant to an inapplicable statutory scheme, *see McConnell*, 12 S.W.3d at 796, 799-800; (2) a sentence designating a RED where a RED is specifically prohibited by statute, *see Lewis*, 202 S.W.3d at 127-28; (3) a sentence ordered to be served concurrently where statutorily required to be served consecutively, *see Burkhart*, 566 S.W.2d at 873; and (4) a sentence not authorized for the offense by any statute, *see Stephenson*, 28 S.W.3d at 912. In each of these cases, relief was appropriate because the trial court

6

did not have the statutory authority (or jurisdiction) to impose the challenged sentence.

313 S.W.3d 751, 759 (Tenn. 2010).

Tennessee Code Annotated section 39-13-202, which defines first degree murder, states that the punishments for first degree murder are as follows:

(1) Death;
(2) Imprisonment for life without possibility of parole; or
(3) Imprisonment for life.

Effective July 1, 1995, a defendant convicted of first degree murder must serve 100% of his or her sentence, less sentence credits earned and retained equaling no more than 15% of the sentence imposed. T.C.A. § 40-35-501(i) (2000) (amended 2001, 2006, 2007, 2009, 2010). A judgment must state if a defendant was "sentenced as a one hundred percent (100%) offender pursuant to § 40-35-501(i)." T.C.A. § 40-5-209(e)(1)(G) (2006). A life sentence is calculated as service of sixty years, less sentence credits earned and retained. *See* T.C.A. § 40-35-501(h)(1) and (i)(1) (2010). Since a sentence of life in prison entitles the defendant to be released after serving 100% of sixty years less any eligible credits, so long as they do not operate to reduce the sentence by more than 15%, or nine years, a defendant may be released after the service of fifty-one years." *See Kermit Penley v. State*, No. E2004-00129-CCA-R3-PC, 2004 WL 2439287, at *3 (Tenn. Crim. App., at Knoxville, Nov. 1, 2004), *perm. appeal denied* (Tenn. Feb. 28, 2005); *see also Michelle Tipton v. State*, No. M2011-00190-CCA-R3-HC, 2011 WL 6291811, at *4 (Tenn. Crim. App., at Nashville, Dec. 13, 2011), *perm. app. denied* (Tenn. Apr. 12, 2012).

Reviewing the face of the Petitioner's judgment, the judgment correctly notes under the release eligibility section that the conviction was for first degree murder. The judgment shows that the Petitioner was sentenced to "Life" in prison. The Petitioner received a valid sentence under our sentencing laws. The Petitioner has not established that his life sentence has expired or that the trial court was without jurisdiction to convict and sentence him. The Petitioner is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we conclude that the petition lacks merit. As such, we affirm the judgment of the habeas court.

_____
ROBERT W. WEDEMEYER, JUDGE