IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 3, 2018 Session

## STATE OF TENNESSEE v. TYRONE CLAY

**Appeal from the Circuit Court for Lake County**
**No. 16-CR-10164   R. Lee Moore, Jr., Judge**

_____

### No. W2017-01047-CCA-R3-CD

_____

The Defendant-Appellant, Tyrone Clay, appeals from the revocation of his community corrections sentence by the Lake County Circuit Court. On appeal, the Defendant argues that the trial court abused its discretion by reinstating a ten-year sentence of full confinement. Upon review, the judgment of the circuit court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

James E. Lanier, District Public Defender; H. Tod Taylor, Assistant Public Defender, Dyersburg, Tennessee, for the Defendant-Appellant, Tyrone Clay.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Phillip C. Bivens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On August 17, 2016, the Defendant entered a guilty plea to aggravated assault and received a ten-year sentence, to be served on community corrections. The trial court additionally ordered the Defendant to attend family counseling as well as undergo an alcohol and drug evaluation. On October 24, 2016, a community corrections probation violation petition and supporting violation report were filed. The petition alleged that the Defendant violated several rules of community corrections, including failing to remain at home absent certain exceptions, failing to pay court costs and supervision fees, failing to report to his supervising case officer, and failing to report any deviation from his weekly activity schedule. The report specifically alleged that, on August 21, 2016, and October

12, 2016, the Defendant was not at home when surveillance officers attempted to conduct a home visit. In addition, as of October 24, 2016, the Defendant had failed to report to his supervising officer for almost a month. Finally, the Defendant failed to complete court ordered family counseling and the alcohol and drug assessment.

The record shows that on October 24, 2016, a capias was issued for the Defendant's arrest based upon the above petition and violation report. The capias contained a scheduled hearing date of November 22, 2016. At the November hearing date, a Probation Violation Order Appointing Counsel was filed and another hearing date was scheduled for January 23, 2017. At the January 23 hearing date, the Defendant did not appear in court and another capias was issued for his arrest. Significantly, the next day, January 24, the Defendant appeared in court and was taken into custody based on his failure to appear on January 23. As will be discussed more fully below, the Defendant had an official court document listing his court date as January 24, 2017. Nevertheless, he was taken into custody. While he was being processed in the jail for his failure to appear, the Defendant slung a door "very hard," causing it to shatter a window. Based on this behavior, the Defendant was additionally charged with and later pleaded guilty to vandalism. A supplement to the violation report including the vandalism conviction was filed on February 24, 2017.

At the April 25, 2017 probation revocation hearing, Autumn Woods, the community corrections officer assigned to supervise the Defendant, testified that she met with the Defendant shortly after his release from jail, explained the community corrections behavior contract, and had the Defendant sign it. The contract appears to be comprised of the initial community corrections rules, signed by the Defendant on August 18, 2016, and another supplemental contract detailing additional rules, signed only by Officer Woods on October 10, 2016. The supplemental contract contains a handwritten notation beneath the offender line, "did not report back." The supplemental contract required every participant to report twice a week within the first ninety days, which the Defendant failed to do. The Defendant reported once for the intake process and one other time during the ninety-day period. To Officer Woods's knowledge, the Defendant never completed his court ordered family counseling or alcohol and drug assessment.

On cross-examination, Officer Woods said that some meetings were supposed to be conducted in Union City. She testified that she would have allowed the Defendant to report by phone if he had transportation problems, but he stopped reporting before she could give him that option. She agreed that she had no personal knowledge of the Defendant's failure to complete his alcohol and drug assessment. She testified, over Defendant's objection, based on an October 18, 2016 letter from Tracy J. Mauldin, an employee from Here's Hope Counseling Center. The letter noted that the Defendant was given and appeared at a September 1, 2016 appointment, which had to be rescheduled to

September 8, 2016, because of another test. The Defendant failed to appear for the rescheduled appointment and had no further contact with the facility.

The Defendant testified and identified a document, admitted as exhibit 2, which showed the Defendant's court date was, in fact, set for January 24, 2017. The document is an official court filing of Lake County Circuit Court entitled, "Explanation of Appearance Date." The Defendant explained that he was upset when he was arrested on January 24 because he "knew [his court] date was on the 24th," as evidenced by exhibit 2. There was no further testimony concerning the discrepancy between the court document showing the January 23 date and exhibit 2. The Defendant said that he had been receiving family counseling from his personal counselor in Dyersburg for the past five years. Although he had requested supporting records for the counseling which were apparently ready to be picked up, he had been unable to do so because of his work schedule. The Defendant conceded that he had not completed his drug assessment but further explained that he had been working and paying child support as required. According to the Defendant, he missed curfew once and only by 10 or 15 minutes, because he was working. He attributed his difficulty meeting with Officer Woods to his revoked driver's license, which required him to rely on others for transportation.

After reviewing the evidence, the trial court revoked the Defendant's community corrections sentence, finding that there was not a satisfactory explanation for the Defendant's failure to report to his supervising officer, failure to complete the drug and alcohol assessment, and failure to provide proof of family counseling. The order revoking the Defendant's ten-year sentence to Westate Corrections Network and reinstating the remainder of the ten-year sentence in confinement in the Tennessee Department of Correction was filed on April 27, 2017. This timely appeal followed.

**ANALYSIS**

On appeal, the Defendant concedes that he violated his community corrections sentence but argues instead that the trial court should have considered mitigating circumstances such as his progress in obtaining employment and his child support payments. In addition, the Defendant argues that his sentence should not have been violated based on unpaid fees and costs because the State's witness did not address his ability to pay, the trial court erred in admitting Officer Woods' testimony concerning the alcohol and drug assessment because it was based on hearsay, and he entered his guilty plea to vandalism without the benefit of counsel. In response, the State argues that the trial court properly revoked the Defendant's community corrections sentence.

The Tennessee Supreme Court has held that the same principles that apply in the revocation of probation also apply in the revocation of community corrections. State v.

Harkins, 811 S.W.2d 79, 83 (Tenn. 1991). The revocation of community corrections, like the revocation of probation, rests within the sound discretion of the trial court. Id. A trial court may revoke either alternative sentence upon a finding by a preponderance of the evidence that the defendant violated the conditions of the sentence. See T.C.A. §§ 40-35-310, -311(e). An appellate court will uphold a trial court's decision to revoke probation or community corrections absent an abuse of discretion. State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005); State v. Webb, 130 S.W.3d 799, 842 (Tenn. Crim. App. 2003) (quoting Harkins, 811 S.W.2d at 82). An abuse of discretion is established if the record is devoid of substantial evidence to support the conclusion that a violation of probation has occurred. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (citing Harkins, 811 S.W.2d at 82). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered, or, in other words, begin the probationary sentence anew; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See T.C.A. §§ 40-35-308, -310, -311 (2012). The trial court determines the credibility of the witnesses in a probation revocation hearing. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991) (citing Carver v. State, 570 S.W.2d 872 (Tenn. Crim. App. 1978)).

The Tennessee Supreme Court has noted that "the full panoply of rights due a defendant in criminal prosecutions" does not apply to probation revocations. State v. Wade, 863 S.W.2d 406, 408 (Tenn. 1993) (internal quotation marks omitted). Specifically, "[t]he strict rules of evidence do not apply in a probation revocation hearing." State v. Justin E. Stinnett, No. E2012-02289-CCA-R3-CD, 2013 WL 3148724, at *3 (Tenn. Crim. App. June 19, 2013) (citing Barker v. State, 483 S.W.2d 586, 589 (Tenn. Crim. App. 1972)). However, the confrontation rights of a defendant, though relaxed at a probation revocation hearing, preclude the admission of hearsay evidence unless: (1) the trial court makes a finding that there is "good cause" to justify the denial of the defendant's right to confront and cross-examine adverse witnesses, and (2) there is a showing that information contained in the evidence is reliable. Wade, 863 S.W.2d at 409.

In this case, it is undisputed that the Defendant violated the terms of his community corrections sentence. He conceded that he had failed to complete his alcohol and drug assessment, failed to meet his probation officer twice a week as required, failed to get home by a specific time after work in violation of his house arrest, failed to provide verification that he was attending family counseling, and failed to pay the required fees and court costs. Nevertheless, we acknowledge that the trial court should not have admitted Officer Woods' testimony based on the letter from Tracy Mauldin. The record does not include a specific finding of good cause to justify the denial of the Defendant's right to confront and cross-examine Mauldin, the State offered no explanation as to why

Mauldin was not present at the hearing, and there was no showing that Officer Woods' testimony based on the Mauldin's letter was reliable. Absent these findings, admission of the testimony was error. See State v. David James Wiley, No. E2004-01463-CCA-R3-CD, 2005 WL 1130222, at *3 (Tenn. Crim. App. May 13, 2005); State v. Brandon Scott Watson, No. M2003-01814-CCA-R3-CD, 2004 WL 1562553, at *3 (Tenn. Crim. App. July 13, 2004); State v. Joyce Newsman, No. M1999-00161-CCA-R3-CD, 2000 WL 994358, at *5 (Tenn. Crim. App. July 12, 2000).

However, review of the evidence offered at the probation revocation hearing without the erroneous testimony supports the revocation of the Defendant's sentence. In revoking the Defendant's community corrections sentence, the trial court considered certain violations to be "technical" and acknowledged the Defendant's explanation for them. It then stressed, "there is no explanation for not reporting to the probation officer . . . or the new charge." The record supports the determination of the trial court. The Defendant violated the terms of his community corrections sentence by failing to meet with Officer Woods, obtaining a new conviction, and failing to provide proof that he was attending court ordered family counseling. Based on this evidence, we conclude that exclusion of the testimony regarding the letter would not have changed the outcome of the Defendant's case. See Tenn. R. Crim. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."); see also State v. Stephen E. Cline, No. M2000-01674-CCA-R3-CD, 2001 WL 1379877, at *4 (Tenn. Crim. App. Oct. 30, 2001) (concluding that the trial court's error in denying the defendant's confrontation rights was harmless in light of other evidence supporting revocation of sentence). Accordingly, this issue does not avail the Defendant any relief.

In regard to the Defendant's remaining claims, the record shows that his revocation was not based solely on his failure to pay fines and costs; therefore, it was unnecessary for the trial court to determine the Defendant's ability to pay or whether his nonpayment was willful. State v. Dye, 715 S.W.2d 36, 40 (Tenn. 1986); Massey v. State, 929 S.W.2d 399, 402 (Tenn. Crim. App. 1996) (citing Bearden v. Georgia, 461 U.S. 660 (1983)); State v. Reginald Perry Davis Lashley, No. M2014-00733-CCA-R3-CD, 2015 WL 866956, at *6 (Tenn. Crim. App. Feb. 27, 2015). Additionally, while the Defendant challenges the validity of his vandalism conviction for the first time in this appeal, this is not the proper avenue to collaterally attack that conviction. See Archer v. State, 851 S.W.2d 157, 163-64 (Tenn. 1993) (holding that a conviction resulting from a guilty plea entered without a knowing and voluntary waiver of rights was not open to attack through a habeas corpus proceeding but rather a petition for post-conviction relief); State v. Tansil, 72 S.W.3d 665, 667 (Tenn. Crim. App. 2001). Moreover, exhibit 1, the judgment signed by the Defendant and the trial judge, clearly shows that the Defendant was advised

of and subsequently waived his right to counsel prior to entering his guilty plea. The Defendant is not entitled to relief.

## CONCLUSION

Based on our review of the record, we conclude that the trial court did not abuse its discretion in finding that the Defendant had violated the conditions of his community corrections sentence and ordering him to serve the remainder of his ten-year sentence in confinement. Accordingly, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE