IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs on March 3, 2026

**THOMAS N. ALLEN v. STANTON HEIDLE, WARDEN**

**Appeal from the Circuit Court for Lake County**
**No. 25-CR-11130    Mark L. Hayes, Judge**

_____

**No. W2025-01364-CCA-R3-HC**

_____

The pro se Petitioner, Thomas N. Allen, appeals the habeas corpus court's summary dismissal of his second petition for writ of habeas corpus for failure to state a cognizable claim for relief.  Specifically, the Petitioner alleges that his life sentence for first degree murder is illegal and his judgment of conviction is void because (1) the trial court's comments regarding parole eligibility were in direct contravention of the relevant statute and (2) the statutory sentencing scheme for persons convicted of first degree murder rendered his sentence unfairly disparate and in direct contravention to the purposes and principles of the Tennessee Criminal Sentencing Reform Act of 1989 ("the Sentencing Act").  He further claims that the habeas corpus court erred by failing to appoint him counsel despite the Petitioner's indigent status.  After review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Thomas N. Allen, Tiptonville, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Leslie Renee Byrd, Assistant Attorney General; Danny Goodman, Jr., District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.    FACTUAL AND PROCEDURAL HISTORY**

In 2006, a Hamblen County jury convicted the Petitioner of the June 2003 first degree premeditated murder of the victim, Donald Wilder, Jr., based upon a theory of

criminal responsibility. *See State v. Smith*, No. E2006-00984-CCA-R3-CD, 2007 WL 4117603, at *1 (Tenn. Crim. App. Nov. 19, 2007), *perm. app. denied* (Tenn. Feb. 25, 2008). At the Petitioner's joint trial with his two codefendants, the evidence established that codefendant George Smith shot and killed the victim with the assistance of codefendant Shannon Jarnigan, his girlfriend. *Id.* at *1-3, *6-7, *9-11, *12-13. Evidence additionally established that the Petitioner ordered the victim's murder, provided a weapon and drugs to assist in the killing, and provided money and drugs in exchange for the killing. *Id.* at *8-13. Several witnesses testified that the Petitioner wanted the victim, a confidential informant, killed for "snitching" on him. *Id.* at *7-8, *11, *18.

Directly following the announcement of the guilty verdict, the trial court informed the jury of the sentencing process for the Petitioner and his two codefendants. The trial court noted that the State had filed a notice of enhancement for the Petitioner's two codefendants and, as such, the two sentencing options were "life imprisonment which means a person has to serve [fifty-one] years before they are eligible for parole or life without the possibility of parole." The trial court then explained that because the State had not filed a notice of enhancement for the Petitioner, his sentence would "automatically be life in prison which . . . is [fifty-one] years before eligibility for parole." When sentencing the Petitioner, the trial court stated, "[T]he jury has found you guilty of murder in the first degree. It's my duty to sentence you to life in prison, which is [fifty-one] years before the eligibility for parole." The trial court recited the Petitioner's rights regarding the appeal process and imposed a life sentence for the Petitioner's conviction. For reasons of "fairness," the State withdrew its notice of enhancement for the Petitioner's codefendants. The trial court then sentenced codefendant Smith "to serve life in prison," noting that it was a sentence of "[fifty-one] years before eligibility for parole." As for codefendant Jarnigan, the trial court ordered, "[I]t is my duty to sentence you to a sentence of life imprisonment which, as I've told everyone else, means [fifty-one] years before eligibility for parole. It's not [fifty-one] years; it's [fifty-one] years before eligibility for parole." The Petitioner's judgment of conviction shows the Petitioner was sentenced to life imprisonment to be served in the Tennessee Department of Correction. Regarding release eligibility, the "1st" degree murder box is checked.

The defendants' filed a direct appeal of their convictions to this court, wherein they collectively challenged the following: (1) the sufficiency of the evidence supporting their first degree murder convictions; (2) the sufficiency of the evidence establishing Hamblen County as the proper venue for the case; (3) the trial court's denial of their motion for change of venue; (4) the trial court's consolidation of the Petitioner's trial with that of his codefendants; (5) the trial court's acceptance of the State's peremptory challenges to two potential jurors after providing a race-neutral reason for exclusion; (6) the trial court's

refusal to grant a new trial after their showing a juror should have been disqualified for actual bias or prejudice; (7) the trial court's admission of a recording of a conversation between the Petitioner's two codefendants; and (8) the trial court's admission of the Petitioner's prior criminal charge for delivery of cocaine. *Smith*, 2007 WL 4117603, at *1. This court affirmed, and the Tennessee Supreme Court denied permission to appeal. *Id.*

Thereafter, the Petitioner filed a petition for both post-conviction relief and a writ of error coram nobis. *See Allen v. State*, No. E2010-01971-CCA-R3-PC, 2012 WL 826522, at *1 (Tenn. Crim. App. Mar. 13, 2012), *perm. app. denied* (Tenn. Oct. 1, 2012). Following a hearing, the post-conviction court denied the petition. *Id.* at *4. On appeal, the Petitioner argued that he was entitled to post-conviction relief based on the ineffective assistance of his trial counsel and prosecutorial misconduct and that he was entitled to coram nobis relief because a witness's recantation amounted to newly discovered evidence. *Id.* at *4-10. This court affirmed the judgment of the post-conviction court. *Id.* at *1. He later filed a petition to reopen the post-conviction proceeding, alleging ineffective assistance of post-conviction counsel. *See Allen v. Parris*, No. 2:15-CV-23, 2018 WL 1595784, at *2 (E.D. Tenn. Mar. 30, 2018) (detailing this prior procedural history while adjudicating the Petitioner's federal writ of habeas corpus). The motion was denied, and this court denied the Petitioner's request for permission to appeal. *Id.*

The Petitioner next filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal court asserting various claims that his conviction and sentence should be overturned. *See Allen*, 2018 WL 1595784, at *1, *3. Many of these claims mirrored his prior allegations for relief on direct appeal and post-conviction proceedings in state court. *Id.* at *3. The district court denied the petition and dismissed the action with prejudice. *Id.* at *16.

In 2018, the Petitioner filed his first petition for writ of habeas corpus in state court, alleging that the indictment for his first degree murder conviction was defective for failing to cite the correct statutory provision, that the trial court erred by giving erroneous jury instructions, and that the indictment was illegally amended during trial. *See Allen v. Phillips*, No. W2018-01736-CCA-R3-HC, 2019 WL 1754047, at *1 (Tenn. Crim. App. Apr. 17, 2019). The habeas corpus court summarily dismissed his petition, and this court affirmed. *Id.*

In 2021, the Petitioner filed a petition pursuant to the Post-Conviction DNA Analysis Act of 2001, wherein he sought DNA testing of the victim's remains. *See Allen v. State*, No. E2022-00373-CCA-R3-PC, 2022 WL 16780005 (Tenn. Crim. App. Nov. 8,

2022), *perm. app. denied* (Tenn. Mar. 9, 2023). The post-conviction court summarily dismissed the petition, which decision this court affirmed on appeal. *Id.* at *2, *6.

On June 9, 2025, the Petitioner filed the instant petition for writ of habeas corpus. Therein, he alleged that he was indigent and requested the habeas corpus court appoint him counsel and asserted that he was entitled to relief based on two grounds. As to the first ground, he argued that the trial court's "instruction to the jury" that provided his sentence was "life in prison which . . . is [fifty-one] years before eligibility for parole" was in direct contravention of Tennessee Code Annotated section 40-35-501(i)(1) and (i)(2)(A) because persons convicted of first degree murder on or after July 1, 1995, were not eligible for parole. Thus, the habeas corpus court's imposition of a life sentence for a first degree murder conviction with parole eligibility rendered his sentence illegal and judgment of conviction void.

Regarding the Petitioner's second ground for relief, he claimed that his sentence was illegal because it was in direct contravention of the purposes and principles of the Sentencing Act. He asserted the Sentencing Act's purpose was to eliminate disparities and inequalities in sentences amongst similarly situated persons. However, he argued the statutory sentencing scheme for persons convicted of first degree murder demonstrated a "clear disparity" when some individuals were sentenced to life imprisonment "with parole" and others were sentenced to life imprisonment "with no parole eligibility." To this point, he noted that persons convicted of first degree murder who received life imprisonment "with parole" were those sentenced before July 1, 1995, and juvenile offenders. Contrarily, he contended that he fell into a category of persons convicted of first degree murder who were sentenced to life imprisonment "with no parole eligibility" despite being a "similarly situated" person and "involved in the same type[] of crime." Therefore, he claimed that his sentence was imposed in direct contravention of the Sentencing Act's purposes and principles requiring that sentences not be disparate or unequal, rendering his judgment of conviction void.

On July 17, 2025, the habeas corpus court summarily dismissed the Petitioner's petition for writ of habeas corpus. While the court noted that the petition was not properly verified by affidavit, it waived strict compliance with Tennessee Code Annotated section 29-12-107(a) and proceeded to consider the substance of the petition.

As to the Petitioner's first ground for relief, the habeas corpus court found that the judgment form showed the Petitioner's sentence as life imprisonment, which was authorized at the time of the Petitioner's conviction under Tennessee Code Annotated section 39-13-202. However, it found that the trial court had "misspoke[n]" to the jury

- 4 -

about the Petitioner's parole eligibility. The habeas corpus court explained that Code section 40-35-501(i) prohibited release eligibility for persons committing the offense of murder in the first degree on or after July 1, 1995. Instead, such persons were required to serve 100 percent of the sentence imposed by the trial court less any sentence credits earned and retained, but no such sentence could be reduced by sentence credits by more than fifteen percent. Notwithstanding the trial court's comments, the habeas corpus court found that the judgment form was correctly completed and, at the time the trial court made these comments, the Petitioner's trial was complete and the guilty verdict rendered. As such, the habeas corpus court found that the trial court's comments did not make the Petitioner's sentence illegal or his judgment of conviction void.

As for the Petitioner's second ground for relief, the habeas corpus court found that the Petitioner was essentially arguing that his sentence was unfairly disparate, rendering it illegal, because of changes made by the legislature over time to sentencing practices concerning persons convicted of first degree murder. The habeas corpus court found that the Petitioner's judgment form did not appear void on its face and was compliant with Tennessee Rule of Criminal Procedure 32. As such, he was not entitled to relief.

The habeas corpus court summarily dismissed the petition. Also, it determined that the Petitioner was indigent, so it did not tax the costs of the proceedings to him.

On September 4, 2025, the Petitioner filed an untimely notice of appeal. Regarding the timeliness of his filing, the Petitioner submitted an affidavit claiming that the habeas corpus court's order denying his petition was not mailed to him until August 18, 2025. He additionally attached the envelope in which the order was mailed from the clerk's office of the habeas corpus court. On September 10, 2025, this court found that the interest of justice weighed in favor of waiving the timely filing requirement and granted the Petitioner's request for a delayed appeal. The Petitioner's appeal is now before this court for review.

## II.    ANALYSIS

The Petitioner contends that the habeas corpus court erred by summarily dismissing his petition for writ of habeas corpus. Specifically, he argues that he presented a colorable claim for relief that his sentence is illegal and judgment of conviction void because the trial court's comments concerning parole eligibility were in direct contravention of statute and his "disparate" sentence was in direct contravention of the purposes and principles of the Sentencing Act. The Petitioner additionally argues that the habeas corpus court erred by failing to appoint him counsel due to his indigent status. The State responds that the habeas corpus court's summary dismissal of the petition was proper because the Petitioner failed

to comply with mandatory procedural requirements in that his petition was not verified by affidavit, and alternatively, he failed to present a colorable claim for relief.

The Tennessee Constitution guarantees a convicted criminal defendant the right to seek habeas corpus relief. *See* Tenn. Const. art. I, § 15. While the right to seek a writ of habeas corpus is a constitutional right, it is regulated by statute in Tennessee. *See Ussery v. Avery*, 432 S.W.2d 656, 657 (Tenn. 1968). The statute provides, with certain limited exceptions, that "[a]ny person imprisoned or restrained of liberty, under any pretense whatsoever, . . . may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment and restraint." Tenn. Code Ann. § 29-21-101(a). However, the "grounds upon which habeas corpus relief will be granted are very narrow." *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999). The writ will issue only where the petitioner has established: (1) a lack of jurisdiction for the order of confinement on the face of the judgment or in the record on which the judgment was rendered; or (2) that the petitioner's sentence has expired, and he is entitled to immediate release. *See State v. Ritchie*, 20 S.W.3d 624, 630 (Tenn. 2000) (citing *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993)). The purpose of the habeas corpus petition is to contest a void, not merely a voidable, judgment. *State ex rel. Newsom v. Henderson*, 424 S.W.2d 186, 189 (Tenn. 1968).

"A void judgment is one that is facially invalid because the court did not have the statutory authority to render such judgment." *Summers v. State*, 212 S.W.3d 251, 256 (Tenn. 2007). A sentence imposed in direct contravention of a statute is illegal and thus, void. *Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000). A petitioner bears the burden of establishing a void judgment or illegal confinement by a preponderance of the evidence. *See Wyatt v. State*, 24 S.W.3d 319, 322 (Tenn. 2000). A habeas corpus court may summarily dismiss a petition without a hearing when the petition "fails to demonstrate that the judgment is void." *Hickman v. State*, 153 S.W.3d 16, 20 (Tenn. 2004); *see* Tenn. Code Ann. § 29-21-109. The determination of whether to grant habeas corpus relief is a question of law, and our review is de novo. *Summers*, 212 S.W.3d at 255.

The procedural requirements of the habeas corpus statutes are "mandatory and must be followed scrupulously." *Archer*, 851 S.W.2d at 165 (citing *Bateman v. Smith*, 194 S.W.2d 336, 337 (Tenn. 1946)). If a petitioner does not strictly comply with these procedural provisions, a habeas corpus court may dismiss the petition on that ground alone. *See Hickman*, 153 S.W.3d at 21; *State ex rel. Kuntz v. Bomar*, 381 S.W.2d 290, 291 (Tenn. 1964).

The procedural requirements for habeas corpus petitions are set forth in Tennessee Code Annotated section 29-21-107, which provides in part that an "[a]pplication for the

writ shall be made by petition, signed either by the party for whose benefit it is intended, or some person on the petitioner's behalf, and verified by affidavit." Tenn. Code Ann. § 29-21-107(a). A petition has been "verified by affidavit" if said affidavit has been notarized or verified under oath. *See Jones v. State*, No. M2019-01935-CCA-R3-HC, 2020 WL 4208425, at *2 (Tenn. Crim. App. July 22, 2020) (finding a petition to be procedurally defective as the affidavits provided by the petitioner were "neither notarized nor verified under oath"); *see also Soimis v. State*, No. M2014-01700-CCA-R3-HC, 2015 WL 1881064, at *2 (Tenn. Crim. App. Apr. 24, 2015) (finding the petitioner failed to verify his petition by affidavit because his signature under the "Verification Under Oath" section was not witnessed by a notary and did not have a stamp affixed).

Initially, we agree with the habeas corpus court that the Petitioner's petition for writ of habeas corpus is not properly verified by affidavit. The last page of the petition is titled, "AFFIDAVIT PURSUANT TO TENN. CODE ANN. § 29-21-107(a)" and is followed by, " I, [the Petitioner], do hereby swear that all of the aforementioned is true and exact to the best of my knowledge as presented on this 24th day of May, 2025[.]" This page additionally bears the Petitioner's digital signature. However, this page is not notarized and there is no indication that the Petitioner was under oath when he signed the petition. *See Soimis*, 2015 WL 1881064, at *2 (holding summary dismissal of a petition for writ of habeas corpus was proper when, *inter alia*, the petitioner failed to have a notary witness his signature and affix the stamp); *Marshall v. Watwood*, No. W2023-01314-CCA-R3-HC, 2024 WL 1174672, at *3 (Tenn. Crim. App. Mar. 19, 2024) (holding that the summary dismissal of the habeas corpus petition was proper based on the petition's lack of verification because it was not notarized and there was no indication the petitioner was under oath when he signed it), *perm. app. denied* (Tenn. July 17, 2024). As such, this procedural defect alone makes the habeas corpus court's summary dismissal proper. *See Hickman*, 153 S.W.3d at 21; *Bomar*, 381 S.W.2d at 291.

However, dismissal of a petition for writ of habeas corpus is not required based on a failure to comply with the statutory procedural requirements, and a habeas corpus court may choose to adjudicate a petition on its merits despite procedural defects. *Hickman*, 153 S.W.3d at 21 (citing Tenn. Code Ann. § 29-21-109). Because the habeas corpus court here did not dismiss the petition based on the Petitioner's failure to comply with the procedural requirements, we will likewise address the merits of the Petitioner's arguments in his petition.

Now, and at the time of the Petitioner's offense, three punishments were available for a conviction for first degree murder: (1) death, (2) imprisonment for life without possibility of parole, or (3) imprisonment for life. *See* Tenn. Code Ann. § 39-13-202(c).

A sentence of imprisonment for life is defined as sixty years. *See* Tenn. Code Ann. § 40-35-501(h)(1); *Brown v. Jordan*, 563 S.W.3d 196, 200 (Tenn. 2018). Relative to offenses committed prior to July 1, 1995, Tennessee Code Annotated section 40-35-501(h)(1) governs release eligibility and parole for defendants convicted of first degree murder who received life sentences. *See Brown*, 563 S.W.3d at 200-01. Under this provision, release eligibility occurs after service of sixty percent of sixty years less any earned and retained sentence reduction credits, but a defendant shall not be eligible for parole until the defendant has served a minimum of twenty-five years of such a sentence, subject to certain authority. *See* Tenn. Code Ann. § 40-35-501(h)(1). Conversely, at the time of the Petitioner's June 2003 offense, Code section -501(i) governed the release eligibility for offenders who committed first degree murder on or after July 1, 1995, and received a life sentence. Code section -501(i) provided:

> There shall be no release eligibility for a person committing [first degree murder], on or after July 1, 1995 . . . Such person shall serve one hundred percent (100%) of the sentence imposed by the court less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236, or any other provision of law, shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%).

Tenn. Code Ann. § 40-35-501(i)(1)-(2)(A). Thus, defendants sentenced under this statute are required to serve one hundred percent of sixty years less any sentence reduction credits up to fifteen percent of the sentence. *See id*.; *Brown*, 563 S.W.3d at 200. Fifteen percent of sixty years is nine years, meaning an offender who receives a life sentence for committing first degree murder on or after July 1, 1995, may be eligible for release, at the earliest, after service of fifty-one years. *Brown*, 563 S.W.3d at 200-01. However, a life sentence under this provision "do[es] not entitle [a d]efendant to parole," but rather "permit[s] release from confinement after serving fifty-one years." *State v. Guerrero*, No. M2014-01669-CCA-R3-CD, 2015 WL 2208546, at *3 (Tenn. Crim. App. May 11, 2015) (emphasis omitted) (citing Tenn. Code Ann. § 40-35-501(i)(1)).

In the present case, we conclude that the Petitioner failed to state a colorable claim for habeas corpus relief. We agree with the habeas corpus court that the trial court in this case misspoke when it stated that the Petitioner would be parole eligible after fifty-one years of service of his life sentence. Rather, the trial court likely meant that the Petitioner may be eligible for release after fifty-one years of service of his life sentence, assuming he earns the maximum allowable sentence reduction credits. *See* Tenn. Code Ann. § 40-35-501(i); *Brown*, 563 S.W.3d at 200-01. Nevertheless, the Petitioner's life sentence, as reflected on his judgment form, is authorized by statute, and as such, he is not

entitled to habeas corpus relief in this regard. *See Draper v. Lindamood*, No. W2013-01030-CCA-R3-HC, 2014 WL 465723, at *3 (Tenn. Crim. App. Jan. 31, 2014) (affirming the summary dismissal of a habeas corpus petition despite the trial court's using the phrase "life sentence with the possibility of parole," instead of "life," to describe the petitioner's sentence under the plea agreement because the court's explanation of the sentence was in line with the statute); *Hearing v. Mills*, No. W2011-01226-CCA-R3-PC, 2012 WL 12931580, at *2 (Tenn. Crim. App. Feb. 28, 2012) (holding the petitioner was not entitled to habeas corpus relief even though his judgments of conviction for felony murder reflected the sentence length as fifty-one years, reasoning such was a clerical error); *Kesterson v. Mills*, No. W2008-00745-CCA-R3-HC, 2009 WL 453967, at *2 (Tenn. Crim. App. Feb. 23, 2009) (affirming the denial of habeas corpus relief despite the trial court's comments regarding lifetime community supervision as a part of the petitioner's sentence when the judgment ultimately entered reflected a proper sentence with no lifetime community supervision requirement).

As to the Petitioner's second ground for relief, he essentially argues that legislative amendments regarding the authorized sentences for offenders convicted of first degree murder created a disparity among similarly situated offenders that contradict the purposes and principles of the Sentencing Act. However, the Petitioner has failed to show how such changes to the sentencing laws divested the trial court of jurisdiction to sentence the Petitioner in this case or how his life sentence was unauthorized or was contrary to the applicable statutory scheme at the time of his offense. The Petitioner's judgment of conviction is facially valid, and the sentence reflected thereon is legal. We agree with the habeas corpus court that the Petitioner is not entitled to relief in this regard. *See Hill v. Genovese*, No. W2021-01150-CCA-R3-HC, 2022 WL 1077316, at *3 (Tenn. Crim. App. Apr. 11, 2022) (rejecting the petitioner's claim that statutory changes to parole eligibility for life sentences for offenders convicted of first degree murder were at odds with the purposes and principles of the Sentencing Act).

Lastly, the appointment of counsel in a habeas corpus proceeding is discretionary. Tenn. Code Ann. § 40-14-204 (providing the habeas corpus court "shall determine the question of indigency and appoint counsel, *if necessary*, in the manner set out in this part." (emphasis added)). As such, "an indigent petitioner does not have a right to appointed counsel in a habeas corpus action except to the extent that appointment of counsel is found to be 'necessary' within the meaning of" Code section -204. *See Summers*, 212 S.W.3d at 260-61. Moreover, a habeas corpus court may dismiss a petition without the appointment of counsel and without an evidentiary hearing when the petition fails to demonstrate that the judgment is void. *See id*. at 261; Tenn. Code Ann. § 29-21-109. As the Petitioner

failed to state a colorable claim for relief, the habeas corpus court did not err by summarily dismissing the petition without the appointment of counsel.

### III.   CONCLUSION

Based on our review, we affirm the judgment of the habeas corpus court summarily dismissing the petition.


 s/Kyle A. Hixson                          
KYLE A. HIXSON, JUDGE